153 So.2d 229

Christine M. JACKSON

v.

Maggie COOK.

7 Div. 538.

Supreme Court of Alabama.

May 9, 1963.

London, Yancey, Clark & Allen, Birmingham, and Ralph Gaines, Jr., Talladega, for appellant.

Thos. Reuben Bell, Sylacauga, for appellee.

COLEMAN, Justice.

This is an appeal by defendant from judgment for plaintiff in action for personal injury allegedly sustained by plaintiff while she was a guest in an automobile operated by defendant.

The complaint contains one count wherein plaintiff alleges that defendant wantonly injured plaintiff.

The error assigned is refusal of the affirmative charge with hypothesis requested in writing by defendant.

Plaintiff and defendant are sisters. The time was Sunday afternoon. The automobile was parked near a church. The ground probably sloped to the rear of the parked vehicle.

Plaintiff's mother, daughter, and niece got on the back seat. Defendant got in under the steering wheel. Plaintiff, apparently, got in the front seat of the car, but got out for the purpose of helping defendant let down the emergency brake. Defendant was able to let the brake down and

plaintiff proceeded to enter the car again. During this re-entry by plaintiff, the car shot backward and plaintiff was injured. She describes the occurrence as follows:

> "A    After I got in the car I closed the door and Christine was having trouble letting down the brakes and it seemed like she couldn't get it down and then I got out of the car and walked around and maybe I could help her let it down and when I got out to help her she done let it down and then I returned to go back and get in the car and I got in the car—to be sure I don't know what happened I don't know whether I was still —but I was in the car and in a little while when I knowed anything, when I realized—whether I closed the door after I got in the car I can't be for sure, but when I knew anything I was under the car and that is as far as I know."

Defendant testified as follows:

> "A    And then as I went to let the brakes down on the car, the brake had stuck I guess, you know, the emergency brake. My husband, every time he stops, pulls them up, and I couldn't get them down and Maggie had come around on my side to help get the brakes down; but, as she got—started around there, then the brake was released.
>
> "Q    Before she got around the car?
>
> "A    Yes, sir.
>
> "Q    Now, was she getting outside of the car to walk around or was she coming over the seat?
>
> "A    She was coming around the front of the car to help me get the brakes loose. And then I got them loose, as I said.
>
> "Q    Before she got there?

> "A    Before she got there. And then she proceeded back.
>
> "Q    Now, when did you start the engine of the car?
>
> "A    Just after she had come around to help me get the brakes loose.
>
> "Q    You got the brakes loose first?
>
> "A    Yes, sir.
>
> "Q    Then you started the engine?
>
> "A    Yes, sir.
>
> "Q    All right, go ahead.
>
> "A    And then she came back around to get in the car, started backing up as she—I can remember she looked like getting, you know, a portion of herself in the car, and as I said, the car was going backwards, and Barbara Ann was hollering, 'Christine, Christine' and Fay was hollering 'Christine' and my mother, they were all hollering. And I just—I don't know, it just happened that quick, and that quick the car swerved around like that, and then the tree hit, and when it hit this tree the door caught hold of this tree and Maggie had fallen out of the car, under the car, and we did take her out from under the car. How many times the car run over her I could not say. But we—and they said I picked the car up myself, but I remember I was hollering and screaming for life and death, and finally looked like nobody would ever help us, you know in time of trouble, and then when they all did everybody came and we got Maggie out from under the car. I remember that as well as I remember my name. When we got her out from under the car they said call the ambulance, call the ambulance and I can remember Maggie saying 'No, no, no, don't call no ambulance'.

My daddy and everybody had a hold of her and we carried her on to her house and she still was hollering, 'I don't need no doctor'. But I knew she was hurt, she had to be hurt, because as fat as she was you know and then the ambulance came and we carried her to the hospital and then I blacked out. That's all I know.

"Q. All right, while she was coming back around to get in the car you started the engine, is that right?

"A Yes, sir, to the best of my knowledge.

"Q That was a 1957 Do(d)ge, is that right?

"A Dodge.

"Q And it has the push button?

"A That's right.

"Q Gear shift, is that right?

"A Yes.

"Q And you can't start the car except when you have got it pushed into neutral?

"A Right.

"Q So you released the brake?

"A Yes.

"Q The engine gear setting was in neutral and then you started the engine?

"A Right.

"Q Now, when did you press the button to put it in reverse, right at the same time?

"A Seems like I can remember pressing the reverse to back up because, see I had to back up, I couldn't go forward.

"Q You were parked up against the curb?

"A Up against the church, up facing the church, and when the car started going backwards I just— that is when I just—I don't know. Just as I told them, it happened so quick, just like a bat out of hell, just that quick, it was over and done.

"Q Now did you ever put your foot on the brake of the car?

"A Now that part I don't remember.

"Q Did you ever put your foot on the accelerator?

"A That part I don't remember. I just don't know what happened.

"Q Well the car was going back faster than just rolling wasn't it?

"A Yes, sir, they was all hollering, you know, and—

"Q And it was going back?

"A It was going back.

"Q Fast?

"A Just a flying I say, because this tree is all that saved us, you know. I always give that tree credit.

"Q Well, now, did Maggie fall out of the car before you got to the tree, or did the tree knock her out of the car?

"A Maggie hadn't really gotten in the car good when the car started going back. She was either, you know, she had one foot in to the best I can remember."

The question for decision is: Can the jury find that defendant was guilty · of

wantonness where defendant is the operator of a parked automobile and is in the driver's seat, plaintiff is in the act of getting into the front seat beside defendant, plaintiff is in the act of closing the right door through which she is entering or has entered and the door is partially open or not completely closed, defendant starts the engine and presses "the button to put it in reverse," the automobile suddenly moves backward at fifty-five miles per hour, and plaintiff is thrown out of and is run over by the automobile, which quickly moves back twenty to fifty feet and hits a tree which stops the automobile?

"In considering the question of the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury was free to draw from the evidence. * * *" English v. Jacobs, 263 Ala. 376, 377, 82 So. 2d 542, 543; McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832. Where from the evidence a reasonable inference may be drawn adverse to party requesting affirmative charge, the charge is properly refused. Aircraft Sales & Service v. Gantt, 255 Ala. 508, 52 So.2d 388.

In wantonness, the party doing the act, or failing to act, is conscious of his conduct, and, without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury. Birmingham Railway & Electric Co. v. Bowers, 110 Ala. 328, 20 So. 345.

Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. First National Bank of Dothan v. Sanders, 227 Ala. 313, 149 So. 848; Schuler v. Nelson Weaver Companies, 270 Ala. 727, 121 So.2d 908.

Defendant contends that there is no evidence from which it can be inferred that defendant consciously and intentionally did some act or omitted some known duty which produced the injury. Defendant states in brief:

"The mental state of the person who did or omitted to do that which duty required in the premises is the matter of controlling importance in cases of this character. Law v. Saks, 241 Ala. 37, 1 So.(2) 28.

"We submit that there is *no direct* evidence in this case which shows that the defendant knew she was doing an act."

It is true that there is no *direct* evidence that defendant acted consciously in causing or permitting the automobile to move backward. There is, however, testimony that the defendant was in the driver's seat and manipulating the push-button controls of the automobile when the car started backward.

With reference to plaintiff, defendant testified: "And then she came back around to get in the car, started backing up as she —I can remember she looked like getting, you know, a portion of herself in the car. * * *"

Certainly, we think, the jury could find that the defendant had knowledge of plaintiff's situation and that defendant, while possessed of that knowledge, caused or permitted the automobile to move backward. Whether defendant acted consciously or inadvertently was for the jury to decide.

In a personal injury action, this court considered the correctness of refusing affirmative instructions requested by defendant to a count in the complaint which charged that plaintiff's injury was " * * 'proximately caused by the wanton, willful,

or intentional conduct of the defendant's servants or agents \* \* \* which willful, wanton, or intentional conduct consisted in this: The servant or agent aforesaid (in that case the conductor) wantonly, willfully, or intentionally caused a car to be set in motion, with the knowledge that plaintiff would probably be injured thereby, and with reckless disregard of the consequences.' " (Par. Added.)

This court held that the affirmative instructions were refused without error and said:

" \* \* \* If the jury, as they might have done, concluded that the conductor saw the plaintiff's situation, as the plaintiff asserted it was, when he signaled the starting of the car, then the next condition to the imputation of wanton or willful misconduct to the conductor in his said act of signaling the starting of the car was likewise a jury question, under all the facts and circumstances of the event. \* \* \* " Birmingham Railway L. & P. Co. v. Jung, 161 Ala. 461, 477, 478, 49 So. 434, 440.

So in the case at bar, if the jury concluded, as they might have done, that defendant saw plaintiff's situation as plaintiff asserts it was, when defendant started the automobile, then the next condition to the imputation of wanton misconduct to defendant in her act of starting the automobile was likewise a jury question.

The question for decision is answered in the affirmative. The jury could find defendant guilty of wantonness under the stated circumstances.

The court did not err in refusing affirmative instructions for defendant, and the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.