This case originates from a purchase and security agreement entered into by Plaintiff/Appellee Abe Berkowitz, and Defendant/Appellant Jackie Fine Arts, Inc. (Jackie), in December of 1979. Pursuant to this documentation, Mr. Berkowitz agreed to purchase an art "master"[1] and certain rights thereto from Jackie Fine Arts, Inc.
On March 27, 1981, Berkowitz initiated these proceedings, seeking rescission of the contract with Jackie and damages for its alleged breach. The original complaint, as amended, included a demand for trial by jury. Trial began on January 10, 1983. After the jury was impanelled, and during opening statements, counsel for Plaintiff informed the court and defense counsel that he was dismissing all counts for breach of contract and elected to proceed solely on the theory of rescission. Under these circumstances, the trial judge retained the jury in an advisory capacity.
After trial, the case was submitted to the jury on the following three interrogatories:
 "1. Did Jackie Fine Arts, Inc., sell a limited edition of 300 prints to Abe Berkowitz?
 "2. Did Jackie Fine Arts, Inc., exercise its best efforts to cause the Limited Edition to be printed and the artist to approve and manually sign and number each print of the Limited Edition as soon as practicable and to sign a Plate upon completion of the printing of the Limited Edition?
 "3. Has the value of the purchase and security agreement been substantially impaired?"
The jury answered all three interrogatories favorably to the Plaintiff.
The trial court, considering (without being bound by) the jury's answers to the interrogatories, entered final judgment on February 28, 1983, cancelling the purchase and security agreement between the parties. Also, the court ordered that the promissory notes given in connection with the agreement were to be cancelled, and that Defendant was to refund to Plaintiff amounts previously paid. The relief, as granted, was conditioned upon the return by Plaintiff to Defendant of the art master, the limited edition prints, and any other items of value received under the original contract.
Upon denial of its post-judgment motion for judgment notwithstanding the verdict or, alternatively, for new trial, Jackie Fine Arts, Inc., appeals. We affirm. *Page 320 
 FACTS
In November of 1979, William Sharp, an independent salesman involved in marketing of art masters as tax shelters, contacted Abe Berkowitz, concerning the possibility of Berkowitz's purchasing a "master" for investment and tax purposes. The "masters" with which Mr. Sharp was involved were offered by Jackie, a corporation engaged in marketing art masters for tax advantages.
On December 13, 1979, Berkowitz signed the contract which forms the basis of this action. The contract was entitled "Purchase and Security Agreement" and involved Jackie Fine Arts, Inc., as the obligee. Pursuant to their agreement, Jackie agreed to sell and Berkowitz agreed to purchase, certain "property." Such "property," as defined by the agreement, consisted of an art "master," all copyright rights related to the master and image, and certain appurtenant rights. The parties' agreement defined "appurtenant rights" to the art master as including the right to copy or reproduce, the right to control the use of, and the right to distribute the image of the master.
As part of the purchase agreement, Berkowitz executed two notes, in amounts of $9,500 and $133,000 respectively. To secure payment of both notes, Jackie retained a security interest in the art master and any products produced by its use, including any limited edition prints or unlimited or poster editions, and the proceeds received from any disposition of those items.
Jackie agreed to use its best efforts to accelerate the printing process. In May 1980, Mr. Berkowitz selected Fine Art Acquisition as his distributor of any limited edition or other appurtenant uses of the master.
The printing of the limited edition of lithographic prints from the art master was done by Circle Fine Arts Corporation. According to Jackie, the original artist, Edward Plunkett, made this selection. Berkowitz, on the other hand, maintains that the decision to use Circle Fine Arts was made by Jackie.
By letter dated December 26, 1979, Jackie informed Berkowitz that the master plates were complete. Berkowitz next informed Jackie that he had selected a distributor, and inquired when the prints would be received. Harvey Rabiner, Jackie's representative, told Berkowitz he could expect the prints subsequent to Berkowitz's first payment on the promissory notes in February — two months later.
In February 1980, Berkowitz forwarded payment of principal and interest on the promissory notes in the amount of $9,603.44 to Jackie, and inquired by phone as to when he might expect delivery of the prints. Another representative from Jackie told Berkowitz that delivery would be forthcoming within two to three weeks after his February payment.
Between March and October of 1980, Berkowitz made numerous phone calls to Jackie complaining of the delay in shipment of the prints, which, at that time, were still undelivered. Jackie neither shipped the prints, nor gave an excuse for failing to ship them.
By letter dated October 13, 1980, Berkowitz requested Jackie's prompt attention to the nondelivery of the prints. On November 14, 1980, having received no response to his earlier correspondence, Berkowitz wrote Jackie threatening to rescind the entire transaction. Jackie again failed to respond. On November 19, 1980, the limited edition was delivered, contrary to Berkowitz's instructions, to his personal office.[2] Berkowitz never received the "Art Master."
By letter to Jackie dated December 18, 1980, Berkowitz made a formal demand for repayment of the purchase price and return *Page 321 
of his promissory notes. Implicit in that letter was Berkowitz's notice of rescission of the contract.
 DECISION
Our standard of review is whether the trial court's decree, here consistent with the recommendations of an advisory jury, is supported by the evidence. Unless there is insufficient evidence (i.e., lack of proof) to support the trial court's decree, or unless the trial court's decree is otherwise so contrary to the great weight of the evidence as to convince the reviewing court that it is palpably wrong and unjust, the trial court's decree must be affirmed. Menefee v. Lowery,375 So.2d 793 (Ala. 1979); Baptist Foundation of Alabama v. Penn,295 Ala. 122, 324 So.2d 766 (1975).
In McCaghren v. McCaghren, 294 Ala. 89, 312 So.2d 384 (1975), this Court stated:
 "When the trial court accepts the findings of an advisory jury, appellate review is directed to the findings of the trial judge just as if the trial judge had heard the case unaided by the jury's advice. 9 Wright and Miller, Federal Practice and Procedure, § 2335.
 "We cannot substitute our judgment for that of the trial court as to the effect to be given conflicting oral testimony dealing with pivotal questions of fact. Johnson v. Godin, 279 Ala. 443, 186 So.2d 722
(1966)." 312 So.2d at 385.
Stated otherwise, only where, after making proper allowances and indulging all reasonable intendments in favor of the court below, we reach the clear conclusion that the findings are unsupported by the evidence or that the judgment is palpably wrong as being against the great weight of the evidence, will we revise verdicts of juries and findings of trial judges on questions of fact. Kelly v. Kelly, 247 Ala. 316, 24 So.2d 265
(1945).
As postured by Appellee, and we think rightly so, the primary issue for our consideration is compliance vel non by Jackie with the terms of the parties' original contract. That is to say, does the evidence support the specific finding of the trial court that "Jackie Fine Arts, Inc., did not exercise its best efforts to cause the Limited Edition to be printed and the parties to approve and manually sign and number each print of the Limited Edition as soon as practicable and to sign a Plate upon completion of the printing of the Limited Edition"? Not only does the evidence of record support this finding; it is undisputed that the art master itself was never delivered to Berkowitz, and this fact justifies the trial court's further conclusion that "the value of the Purchase and Security Agreement has been substantially impaired."
The ultimate question, then, is whether the trial court's finding that Jackie's failure to comply with the requirement of timeliness in its performance under the contract, justifies its order upholding Berkowitz's right of rescission? We hold that it does. Code 1975, § 7-2-309. Furthermore, we hold that the judgment is not so against the great weight and preponderance of the evidence as to require a new trial.
AFFIRMED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
BEATTY, J., concurs in the result.
[1] An art "master" is the plate or plates from which lithograph prints of the image can be made.
[2] According to Defendant, "By error of Circle Fine Arts, the limited edition was shipped to Mr. Berkowitz's office in Birmingham. This was done in total disregard of the shipping order which Jackie Fine Arts, Inc., provided to Circle Fine Arts on June 16, 1980, which stated that the prints were to be shipped to Mr. Berkowitz's distributor, Fine Art Acquisitions, and that the plates, or art master, were to be shipped to Mr. Berkowitz."