This is an appeal from a judgment for Shirley Pierce against Charles ("Charlie") and Beth Pierce for conspiring to defraud Shirley. The jury returned a $60,000 verdict for Shirley, and the trial court entered judgment on the verdict. Charlie and Beth raise issues regarding denial of their motions for a mistrial, directed verdict, judgment notwithstanding the verdict, and new trial; those motions raised, among other issues, res judicata, collateral estoppel, and the statute of limitations. Beth also appeals from the denial of her motion for new trial on her claim against Shirley on a promissory note and mortgage.
On April 27, 1982, the Mobile Circuit Court entered a judgment of divorce in favor of Shirley Pierce against Charlie Pierce. That judgment ordered Charlie to pay the remaining $10,000 mortgage balance on Charlie and Shirley's house in Saraland to Alabama Federal Savings Loan Association ("Alabama Federal"). The judgment further ordered Charlie to sell the house and divide the proceeds equally with Shirley. After the divorce, Shirley moved to Gulf Shores, Alabama. Charlie married Beth, who is one of the defendants in this action.
At the end of August 1982, Charlie told Shirley he intended to borrow $50,000 from his parents to pay debts of the marriage, personal loans, and taxes that had led to liens on the house. Shirley and Charlie signed a promissory note for $50,000 payable to Charlie's parents, W.T. and Pearl Pierce. (W.T. Pierce died before the trial.) The note was secured by a $50,000 second mortgage on Charlie and Shirley's house.
Charlie stopped making the mortgage payments to Alabama Federal. On April 13, 1983, Alabama Federal foreclosed the mortgage and recorded the foreclosure deed in the Probate Court of Mobile County. Prior to the foreclosure, notices were published in the Mobile Press Register from March 16, 1983, through mid-April 1983. Pearl purchased the house for $10,000 at the foreclosure sale. Shirley allegedly did not know that the mortgage on the house had been foreclosed until Charlie informed her on May 17, 1984, a month after her right to redeem the property had expired.
On July 23, 1984, Shirley filed a motion for rule nisi against Charlie, seeking to have him found in contempt of court for his *Page 596 
failure to comply with the divorce judgment. The motion requested the court to order Charlie to pay Shirley $75,000, the claimed value of Shirley's half interest in the house. The court at first ordered a commissioner to sell the house, but later entered an order denying Shirley's motion to have the house sold.
On May 3, 1985, Shirley filed a complaint against Charlie and his mother Pearl. The final amended complaint added claims against Beth. Shirley alleged that Charlie had defrauded her by not paying the mortgage debt; by allowing Pearl to purchase the house at the foreclosure sale; and by thus defeating Shirley's rights to the proceeds from the sale of the house. Shirley further alleged that Beth, Pearl, and Charlie conspired to defraud her. Charlie and Beth answered individually and asserted defenses of res judicata, collateral estoppel, and the statute of limitations.
In late March 1986, Pearl conveyed the house to Beth and assigned the $50,000 promissory note and mortgage to Beth. On July 15, 1986, Beth sued Shirley for defaulting on the mortgage and promissory note. This claim was consolidated with Shirley's claims for trial.
During the trial, Charlie and one of Shirley's lawyers had a physical fight in front of the jury. Beth and Charlie both moved for a mistrial. The trial court denied the motions.
At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, Beth moved for a directed verdict. The trial court denied the motions. The trial court also refused to give Beth's requested jury charges concerning res judicata, collateral estoppel, constructive notice, and the statute of limitations.
As to Shirley's claims, the jury returned a verdict against Beth and Charlie but not against Pearl. The jury, through special interrogatories, found Beth and Charlie liable for conspiring to defraud Shirley and found Charlie liable for legal fraud, and it awarded Shirley $30,000 in compensatory damages and $30,000 in punitive damages. The jury also returned a verdict for Shirley on Beth's suit on the note and mortgage. The trial court entered judgment on the verdicts. Beth and Charlie filed separate motions for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied both motions.
The first issue presented by Charlie and Beth is whether the trial court erred by denying their motions and by refusing Beth's charges to the jury based on res judicata and collateral estoppel. The res judicata defense requires these four elements: (1) a prior judgment by a court of competent jurisdiction; (2) that the prior judgment was rendered on the merits; (3) that the parties to both suits are substantially identical; (4) that the same cause of action is present in both suits. Tatum v. Kelley, 481 So.2d 1132, 1135
(Ala. 1985). Charlie and Beth contend that the court's ruling on Shirley's motion for rule nisi should have res judicata and collateral estoppel effects on Shirley's fraud claims in this lawsuit. Although Shirley pleaded in her motion all the facts that serve as the basis for her fraud claims, the court hearing the motion was addressing Charlie's compliance with the divorce judgment, not fraud, conspiracy to defraud, or fraudulent conveyances.
Furthermore, because Charlie no longer owned the house, the court hearing the motion would not have ordered that the house be sold; any relief that Shirley would have been granted would have been a property division related to the divorce. See Thomas v. Thomas, 406 So.2d 939
(Ala.Civ.App. 1981), and Timmons v. Central Bank of theSouth, 528 So.2d 845 (Ala. 1988). The relief would not have included setting aside the allegedly fraudulent conveyance from Pearl to Beth, nor would the relief have included compensatory and punitive damages for fraud and conspiracy to defraud. Shirley's motion for rule nisi and her action based on fraud are not the same causes of action; accordingly Charlie and Beth's res judicata defense fails.
The defense of collateral estoppel requires four elements: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the *Page 597 
prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) identical parties. Lott v.Toomey, 477 So.2d 316, 319 (Ala. 1985). The motion for rule nisi raised issues concerning Charlie's compliance with the divorce judgment, specifically, the requirement that he pay Shirley half of the house's value at the time of the divorce.
Shirley's claims of fraud and conspiracy raise issues concerning Charlie's conduct that led to Alabama Federal's foreclosing the mortgage and to the subsequent events that may have defeated Shirley's interest in the house. The issues raised by Shirley's present claims are not identical to the ones in the prior lawsuit, nor was their resolution necessary to the order on the rule nisi motion. Thus, collateral estoppel does not bar litigation of any issue raised by Shirley's present claims.
The second issue presented by Charlie and Beth is whether Shirley had constructive notice of the alleged fraud so that the statute of limitations would bar her action. Charlie and Beth's argument is twofold: they claim that both the recordation of the foreclosure deed and the foreclosure notices in the Mobile Press Register should constitute constructive notice to Shirley.
Beth and Charlie base their argument that the foreclosure deed gave Shirley notice on Batchelor v. Batchelor,502 So.2d 751 (Ala. 1987). In Batchelor a purchaser of land, who said she had not previously received a copy of the deed, brought a fraud claim against the seller, who apparently had recorded the deed from him to the purchaser. This Court held that the recordation of the deed gave the purchaser constructive notice of the existence of a mortgage referred to in the deed. Shirley, however, had an interest antecedent to the making or recording of the foreclosure deed; her claim to the property arose before the foreclosure deed was made or recorded. Furthermore, the constructive notice imposed on subsequent purchasers by recordation of a deed is distinct from the rule regarding notice of facts that should have led to discovery of fraud, and we see no reason to apply the former principle here. Accordingly, Batchelor is distinguishable and Charlie and Beth's argument based on Batchelor is inapposite.
An analysis of whether the foreclosure notices in the newspaper constituted constructive notice requires that we consider the evidence more closely. Foreclosure notices ran in the Mobile Press Register from March 16, 1983, through mid-April 1983, and the foreclosure sale was held April 13, 1983. Prior to that sale, in August 1982, Charlie and Shirley had signed a $50,000 promissory note, and to secure it had given a mortgage on the house; Charlie had represented to Shirley that he would pay that note. In early May 1984, Shirley learned that Beth and Charlie, after living in Beth's house for a while, had moved into Charlie and Shirley's house. Shirley then demanded that Charlie sell the house and give her half the proceeds of the sale. The evidence indicates that on May 17, 1984, Charlie contacted Shirley by telephone and told her "Okay, smartass, you're not as smart as you think you are. I've got news for you. You don't know the facts. The fact is that you don't own a house any more." The evidence indicates that prior to that announcement, Shirley neither had knowledge of Charlie's true actions nor had reason, other than the foreclosure notices in the newspaper, to believe that he was acting to defeat her interest in the house. Considering all of the evidence, we cannot say that the trial court erred in ruling that the facts presented at least a jury question on discovery of the alleged fraud.
Charlie and Beth's third issue is whether the trial court erred in denying their motions for a mistrial. The series of events that serve as the basis for their mistrial motions began while Shirley's lawyer, Bob Clark, was cross-examining Beth. The events culminated in a fight between Charlie and Clark.
The trial court restored order, then recessed and asked the jury to go to the jury room. Beth left to take Charlie to a hospital. After the jury had returned to the *Page 598 
courtroom, but before the trial judge was back in the courtroom, another lawyer from another case joked and laughed with the jury. The trial judge was informed about this later.
Beth and Charlie moved for a mistrial. The trial judge told the jurors that, if they thought the incident they had just witnessed would affect their judgment on the merits of the case, he would declare a mistrial. He then asked the jurors if the incident would influence their verdict. All the jurors said that it would not.
Beth and Charlie contend that a mistrial should have been granted for two reasons. First, they argue that in this situation a mistrial should have been granted as a matter of course because the disruption of the proceedings was so complete. They further assert: "Plaintiff hired her lawyers to punish Charlie, her ex-husband. She got what she paid for since Plaintiff's lawyer whipped Charlie by pounding his head onto the floor." Based on that assertion, they argue that since Clark, an officer of the court, was involved in the fight, the motion should have been granted.
The Court in Bucyrus-Erie Co. v. Von Haden,416 So.2d 699 (Ala. 1982), held:
 "The trial judge is vested with a wide discretion in determining whether incidents which occur during a trial affect the rights of either party to have a fair trial, and his discretion may not be reviewed unless it clearly appears that his discretion has been abused. The trial court is in a better position than this Court to determine the probable effect of such incidents."
416 So.2d at 701.
This principle applies to Beth and Charlie's mistrial motions. The trial court was in a better position than this Court to determine the probable effect of the incident.
Furthermore, we see no point in benefiting Charlie, when from the trial transcript it appears that he is at least as much to blame for the incident as Clark. Considering the entire record, we hold that the trial court did not err in denying the motions for mistrial.
Beth raises the additional issue of whether the court erred in denying her motion for a new trial on her suit, which was based on the ground that the verdict was against the great weight of the evidence. A jury verdict is presumed correct and will not be set aside unless it is without supporting evidence or is so contrary to the evidence as to render it wrong and unjust. Harris v. Meadows, 477 So.2d 374
(Ala. 1985). Only if the findings below are against the great weight of the evidence will this Court change a jury verdict.Jackie Fine Arts, Inc. v. Berkowitz, 448 So.2d 318,321 (Ala. 1984). The trial court's denial of Beth's motion for a new trial, made on the ground that the verdict was against the great weight of the evidence, strengthens the presumption that the verdict was correct. Cammorata v.Woodruff, 445 So.2d 867, 873 (Ala. 1983).
The trial court charged the jury with regard to Shirley's defense that the loan and note were a gift or, in the alternative, that the debt had been forgiven. A gift requires (1) intent by a donor to make a gift; (2) delivery of the property to the donee; and (3) acceptance by the donee.First Alabama Bank of Montgomery v. Adams,382 So.2d 1104, 1110-11 (Ala. 1980). Pearl stated in her deposition that the mortgage did not mean anything to her and that not only did she never expect Charlie and Shirley to pay her back but also "they knew it, too." Pearl further said that she had "given that mortgage and note to Beth" and that she had conveyed them to Beth so that "[Beth] would keep it for Charlie" and "take care of Charlie." Charlie himself admitted that Pearl told him Pearl wanted to "give them [the house and promissory note] to Beth so Shirley can't get it." Pearl conveyed the house, the promissory note, and the mortgage to Beth. Based on this evidence, the jury would have been entitled to find that Pearl's conveyance to Beth was a gift and to return a verdict for Shirley.
Because the trial court did not commit reversible error on any of the issues presented for review and because the jury's verdicts were not against the great *Page 599 
weight of the evidence, the judgment is due to be affirmed.
AFFIRMED.
JONES, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in the result.