[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 165 
These appeals, consolidated here because they arise out of the same transactions or occurrences, present two issues: the sufficiency of the evidence to support the homeowners' allegations that they suffered damage as a result of the defendant's blasting operations in strip-mining coal, and the sufficiency of the evidence to support the defendant's counterclaim against the plaintiffs for trespass on its property.
In 1978, the plaintiffs, Ronnie and Donna Tittle, purchased 3.1 acres of land in Walker County near the Town of Eldridge, Alabama. In January 1983, they completed building a house on this land, at a cost of $41,300. Sometime between August and October 1985, defendant IMAC Energy, Inc. (hereinafter referred to as "IMAC"), began blasting operations approximately 300 feet from the Tittles' house. During the next several months, IMAC's blasting operations allegedly caused the following problems with their house: cracks in the plasterboard, cabinets pulling away from the walls, buckling in the floor, and nail heads emerging through the plasterboard. In addition, the Tittles say that during this time they found that their drinking water began tasting as though it contained copper or iron and that the dust or debris from IMAC's blasting constantly fell on their property.
The Tittles further alleged that they experienced unannounced detonations conducted by IMAC; that the polluted water caused their daughter's hair to turn orange and caused their toilet bowls to turn black; that they were forced to purchase a water purification system; and that they were forced to endure, for over two years, the constant anxiety of unannounced detonations.
On December 20, 1985, the Tittles sued IMAC, Tim McCoy (an officer of IMAC), and others, stating six separate counts, consisting of alleged negligence or wantonness allegedly causing personal injury; intentional infliction of emotional distress; trespass by sonic and earth-borne shocks; negligence or wantonness allegedly causing property damage; trespass by dirt, rock, persons, and vehicles; and trespass by mining beyond legal limits. IMAC counterclaimed against the Tittles, alleging trespass, negligence, and wantonness. The Tittles entered into a pro tanto settlement with the other defendants, except McCoy, and the trial court directed a verdict in favor of him on all counts except trespass. Thus, only the Tittles' claims against IMAC, IMAC's counterclaim against the Tittles, and the Tittles' trespass claim against McCoy proceeded to trial.
At trial, the jury returned a verdict in favor of the Tittles and against IMAC on count four of the Tittles' complaint alleging *Page 166 
IMAC's negligence and wantonness in causing damage to their real property and awarded the Tittles $60,000 in compensatory damages based on damage to real property, $0 in compensatory damages to personal property and $100,000 in punitive damages. The jury also returned a verdict in favor of the Tittles' as to count five of their complaint alleging IMAC's trespass by dirt, rock, persons, and vehicles and awarded the Tittles $750 in compensatory damages and $10,000 in punitive damages. The jury awarded IMAC $15,000 in compensatory damages and $5,000 in punitive damages on its counterclaim alleging trespass by the Tittles. The jury further found in favor of Tim McCoy on the Tittles' allegation of trespass. Both IMAC and the Tittles appealed the respective judgments entered pursuant to the jury verdicts.
IMAC argues on appeal that the evidence is insufficient to support the jury's finding that IMAC was negligent and to justify the amount of damages awarded to compensate for property damage. IMAC basically argues that the jury award was based on count four of the Tittles' complaint, which alleged real property damage resulting from alleged negligence or wantonness on the part of IMAC in conducting blasting operations, and it argues that "[n]o claim for abnormally dangerous activity was stated in the complaint and no evidence of abnormally dangerous activity was proven." IMAC states that it is aware of this Court's decision in Harper v. RegencyDevelopment Co., 399 So.2d 248 (Ala. 1981), which adopted the doctrine set out in the Restatement (Second) of Torts § 519 (1977), relating to abnormally dangerous activity, but argues that in this case, the Harper rule does not apply, "because abnormally dangerous activity was not pled, proven or even instructed to the jury."
IMAC also maintains that there was insufficient evidence of wantonness to warrant an award of punitive damages and further argues that the jury's award of compensatory damages to the Tittles on their trespass claim is in error because it exceeds the amount asked for by the Tittles in their complaint.
The Tittles contend, on their appeal from the judgment entered against them, that the jury's award of compensatory and punitive damages to IMAC for the Tittles' alleged trespass is palpably wrong and manifestly unjust.
Because the legal issues presented in both appeals question the sufficiency of the evidence to support the findings made by the jury, we believe it is appropriate to first state the rule of law applicable to our review. A jury verdict is presumed correct and will not be set aside unless it is without supporting evidence or is so contrary to the evidence as to render it wrong and unjust. Harris v. Meadows, 477 So.2d 374
(Ala. 1985). Only if the findings below are against the great weight of the evidence will this Court change the jury verdict.Jackie Fine Arts, Inc. v. Berkowitz, 448 So.2d 318, 321 (Ala. 1984). See Pierce v. Rummell, 535 So.2d 594, 598 (Ala. 1988). Furthermore, the determination of damages, when they are established by competent evidence, is within the sound discretion of the jury, and once assessed, are presumed to be correct. See Hollis v. Wyrosdick, 508 So.2d 704 (Ala. 1987).
 Was there sufficient evidence of IMAC's negligence to sustain the jury's verdict in favor of the Tittles?
We first address IMAC's contention that the evidence is insufficient to warrant a finding by the jury that it negligently or wantonly performed blasting activities that proximately resulted in the damage claimed by the Tittles.
IMAC correctly recognizes that this Court has adopted theRestatement section relating to "abnormally dangerous" activities and recognizes that the use of explosives under abnormally dangerous conditions is negligence and is thus actionable if such conduct proximately causes damage to another, but IMAC claims that no proof of such negligence was offered in this case. See Harper v. Regency Development Co.,399 So.2d 248 (Ala. 1981), which sets out the rule. IMAC asserts that the Tittles cannot benefit from the Harper rule because they failed to claim that IMAC's blasting operations constituted an abnormally dangerous *Page 167 
activity and did not prove any set of facts showing that IMAC's blasting was negligently performed.
In Harper, this Court stated the rule, as follows:
 "The Restatement (Second) of Torts, § 520 (1977), sets forth the following factors to be considered in determining whether an activity is abnormally dangerous:
 "(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 "(b) likelihood that the harm that results from it will be great;
 "(c) inability to eliminate the risk by the exercise of reasonable care;
 "(d) extent to which the activity is not a matter of common usage;
 "(e) inappropriateness of the activity to the place where it is carried on; and
 "(f) extent to which its value to the community is outweighed by its dangerous attributes.
 "It is apparent that liability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity. Restatement (Second) of Torts, § 519, Comment d (1977). The basis for liability is that one who for his own purposes creates an abnormal risk of harm to his neighbors must be responsible for relieving that harm when in fact it does occur.
 "The rule of strict liability, however, only applies to that harm which is within the scope of abnormal risk upon which liability is based. In other words, one who detonates explosives on his own property may be responsible for the risk of harm to persons or property in the vicinity. If, however, no explosion takes place, but someone trips over the dynamite and breaks a leg, strict liability will not apply. Restatement (Second) of Torts, § 519, Comment e (1977).
 "Our adoption of the Restatement is not a holding that the mere act of blasting — anytime, anywhere — will subject one to liability without fault. The Restatement (Second) of Torts, § 519 (1977), speaks of 'abnormally dangerous activities.' Thereafter, § 520 provides guidelines against which to test the appropriateness of the blasting operations. Each case will present its own set of facts against which the § 520 guidelines will apply.
 "A finding, guided by a consideration of factors outlined in the Restatement, that the blaster was 'one who carries on an abnormally dangerous activity' is a finding of negligence — the breach of a legal duty — and, a further finding that such conduct proximately damages another, renders the blaster liable therefor. Ordinarily, both of these determinations will be issues of fact for the jury."
399 So.2d at 253.
In Industrial Chemical Fiberglass Corp. v. Chandler,547 So.2d 812, 881 (Ala. 1988), this Court reiterated the long-standing rule that "the amount of care required by the standard of reasonable conduct is commensurate with the apparent risk or danger." See McClusky v. Duncan, 216 Ala. 388,113 So. 250 (1927). This Court stated:
 "[A]s the danger becomes greater, the actor is required to exercise caution commensurate with it — those who deal with dangerous instrumentalities, such as explosives or chemicals, must exercise a great amount of care because the risk is great. 'They may be required to take every reasonable precaution suggested by experience or prudence.' W. Keeton, Prosser and Keeton on Torts (5th ed. 1984)."
547 So.2d at 831.
In this case, the Tittles alleged in their complaint that IMAC's mining activities were unlawful, negligent, reckless, wanton, willful, and inherently dangerous and that these activities proximately caused damage to the Tittles' real property.
At trial, the Tittles presented evidence from which the jury could have concluded that IMAC violated Alabama Surface Mining Commission regulations on a number of occasions, and there is substantial evidence of the number of cracks that developed throughout the Tittles' house, according to *Page 168 
testimony, after the blasting activity began.
The evidence demonstrated that IMAC was aware of the Tittles' residence, and the Tittles presented testimony that IMAC had been informed that its blasting activities were damaging the Tittles' residence. We hold, based on the evidence in the record, that the jury's finding that IMAC negligently damaged the Tittles' property is adequately supported by the evidence.
 Was there sufficient evidence to support the jury's award of compensatory and punitive damages to the Tittles for IMAC's damage to the Tittles' real property?
The proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage.Nelson Brothers, Inc. v. Busby, 513 So.2d 1015, 1017 (Ala. 1987); Dooley v. Ard Oil Co., 444 So.2d 847, 848 (Ala. 1984). Although mathematical certainty is not required, a jury cannot be left to speculate as to the amount of damages, but " '[t]his does not mean that the plaintiff must prove damages to a mathematical certainty or measure them by a money standard. Rather, he must produce evidence tending to show the extent ofdamages as a matter of just and reasonable inference.' C. Gamble, Alabama Law of Damages § 7-1 (2d ed. 1988)." IndustrialChemical Fiberglass Corp. v. Chandler, 547 So.2d 812, 820
(Ala. 1988). (Emphasis added.)
In Dooley, the jury awarded the property owners $70,000 in compensatory damages after the owners presented evidence that the purchase price for the property and its contents had been $45,000 and that the building and its contents were insured for $40,000. The owners presented further evidence showing that the "repair or replacement value" of the property was between $120,000 and $174,000. This Court affirmed a judgment based on the jury's damages award of $70,000.
In this case, the jury found "in favor of the plaintiffs Ronnie and Donna Tittle, and against the defendant IMAC Energy, Inc. on the issue of negligence or wantonness resulting in damage to real property as alleged in count four of plaintiff's complaint and assess[ed] plaintiffs' damages at $60,000."
The Tittles claimed in count four of their complaint that they endured IMAC's blasting and resulting damage to their dwelling for over two years. They alleged that they suffered mental and emotional stress and anguish as a result of the past and present physical damage to their dwelling and that they also feared future damage to their dwelling. In count four, the Tittles claimed $35,000 in compensatory damages for the diminution in value and the cost of restoring their residence; $10,000 in compensatory damages for the destruction of their peaceful use and enjoyment of their residence; and $25,000 for their past, present, and future emotional and mental anguish and anxiety.
In support of these allegations, the Tittles produced evidence that in January 1983, they paid $41,300 for the construction of their residence and that on August 3, 1988, after the blasting had ceased, the Tittles obtained a repair estimate of $8,500. Although the Tittles presented no evidence indicating the difference in the fair market value of their property before the blasting and its fair market value after the blasting, they testified that they were unable to obtain an appraisal of their residence after litigation had begun. They introduced evidence that they experienced unannounced detonations conducted by IMAC; that they had to suffer the bad smell and foul taste of their formerly clear well water; that their daughter's hair turned orange as a result of the polluted water; that the polluted water caused their toilet bowls to turn black; that the poor water quality forced them to purchase a water purification system at a cost of $2,495; and that they had to endure, for over a two-year period, the constant anxiety of unannounced detonations by IMAC. We hold that this evidence sufficiently supports the jury's verdict of $60,000 in compensatory damages as a just and reasonable inference *Page 169 
from the evidence presented to support count four of the Tittles complaint.
The jury also awarded the Tittles $100,000 in punitive damages on this count of alleged negligence and wantonness. Punitive damages may be awarded when the actions complained of are willfully or wantonly committed in disregard of the rights of others. The issue of whether the defendant's conduct was committed willfully, wantonly, or intentionally is a question for the jury on the issue of punitive damages, and prior and subsequent acts may be considered for the purpose of determining the defendant's intent. Surrency v. Harbison,489 So.2d 1097 (Ala. 1986). Wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury. Wantonness may arise from knowledge that persons are likely to be in a position of danger. This knowledge need not be shown by direct proof, but, like any other fact, may be shown by circumstances from which the fact of actual knowledge is a legitimate inference. Bishop v. Poore, 475 So.2d 486 (Ala. 1985).
In considering the question whether the evidence of wantonness was sufficient to be submitted to the jury, this Court must accept as true the evidence most favorable to the plaintiff, and must indulge such reasonable inferences as the jury was free to draw from that evidence. Jackson v. Cook,275 Ala. 151, 153 So.2d 229 (1963). A wantonness count should go to the jury if there is any evidence to support a finding of wantonness. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797
(1972). See Bishop, 475 So.2d at 487.
The Tittles presented evidence that IMAC was well aware of the Tittles' complaints, yet continued its blasting operations for another two years. Ronnie Tittle testified that on several occasions he personally went to IMAC's mine site to complain about the blasting. After a review of the record, we hold that the Tittles presented sufficient evidence of wantonness to support the jury's award of punitive damages for IMAC's damage to the Tittles' real property.
 Was there sufficient evidence to support the jury's award of compensatory and punitive damages to the Tittles for IMAC's alleged trespass on the Tittles' property?
The Tittles claimed compensatory damages for IMAC's trespass by dirt, rock, persons, and vehicles in the amount of $1 plus $50,000 in punitive damages. The jury returned a verdict in favor of the Tittles and awarded the Tittles $750 in compensatory damages and $10,000 in punitive damages. IMAC contends that a jury cannot award an amount exceeding the amount actually claimed in the plaintiff's complaint.Southern Ry. v. McGowan, 149 Ala. 440, 43 So. 378 (1907). However, this Court has more recently held that a party need not claim a specific amount of damages unless that party also claims "special damages," Mobile City Lines, Inc. v. Proctor,272 Ala. 217, 130 So.2d 388 (1961). See Rule 54(c), Ala.R.Civ.P.
The evidence presented to the jury reveals that IMAC's blasting caused dirt, rock, and dust to be thrown onto the Tittles' property; that IMAC trespassed onto the Tittles' property with its bulldozers, removing several survey stakes, and that IMAC caused the removal of a power pole from its previous location on the Tittles' property. We hold that this evidence was sufficient to support the jury's verdict against IMAC of $750 in compensatory damages.
Punitive damages in a trespass claim are awarded only where the trespass is accompanied by "rudeness, wantonness, recklessness, or an insulting manner, or accompanied by circumstances of fraud and malice, oppression, aggravation, or gross negligence." First National Bank of Pulaski, Tenn. v.Thomas, 453 So.2d 1313, 1320 (Ala. 1984). We hold that the jury had before it sufficient evidence from which it could return a verdict against IMAC for punitive damages on the Tittles' trespass claim.
 Was there sufficient evidence to support the jury's award of compensatory and punitive damages to IMAC for the *Page 170 Tittles' alleged trespass on IMAC's property?
The jury also awarded IMAC $15,000 in compensatory and $5,000 in punitive damages for the Tittles' trespass on IMAC's property. IMAC presented evidence that the Tittles had trespassed on the mine site with their "four-wheelers" (i.e., four-wheeled recreational vehicles) and that, as a result, IMAC was forced to spend $15,000 to revegetate 24 acres. Like the evidence presented by the Tittles in supporting their claims, the evidence presented by IMAC in support of its claim of trespass was sufficient to support the jury's award.
For the foregoing reasons, the judgments of the trial court, entered upon the jury verdicts, are hereby affirmed.
89-1226 AFFIRMED.
89-1281 AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and INGRAM, JJ., concur.