669 So.2d 878 (1995)
HARCO DRUGS, INC.
v.
Malvina M. HOLLOWAY and Joaquin M. Holloway, Jr.
1930981.
Supreme Court of Alabama.
October 27, 1995.
*879 Mark A. Newell and Susan Gunnells Smith of Janecky, Newell, Potts, Hare & Wells, P.C., Mobile, for Appellant.
Davis Carr, James W. Lampkin II and W. Pemble DeLashmet of Pierce, Carr & Alford, P.C., Mobile, for Appellees.
Matthew C. McDonald and A. Lynne Wiggins of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for amicus curiae on application for rehearing Alabama Retailers Ass'n.
Jay F. Guin and Bruce P. Ely of Tanner & Guin, P.C., Tuscaloosa, for amicus curiae on application for rehearing Business Council of Alabama.
Peter J. Kadzik, Margaret Feinstein, Bridget O'Connor and Douglas M. Chapin, Jr. of Dickstein, Shapiro & Marin, L.L.P., Washington, D.C., for amicus curiae on application for rehearing Nat. Ass'n of Chain Drug Stores, Inc.

On Application for Rehearing
PER CURIAM.
The opinion of August 11, 1995, is withdrawn and the following is substituted therefor.
The defendant, Harco Drug Company ("Harco"), appeals from a judgment entered on a $255,000 jury verdict for the plaintiffs, Malvina and Joaquin Holloway. The Holloways alleged that one of Harco's pharmacists had negligently or wantonly misfilled Ms. Holloway's prescription. The Holloways' complaint also alleged that Harco had failed to initiate sufficient institutional controls over the manner in which prescriptions were filled and that, as a result, Ms. Holloway's prescription for a breast cancer medication had been incorrectly filled. The jury awarded Ms. Holloway $100,000 in compensatory damages and $150,000 in punitive damages; Mr. *880 Holloway was awarded $5,000 on his derivative claim for loss of consortium. We affirm.
This appeal presents the following issues:
1) Whether the evidence was sufficient to submit the wantonness claim to the jury;
2) Whether the trial court abused its discretion in admitting evidence of certain incident reports previously prepared by Harco employees in connection with errors that had occurred in filling prescriptions; evidence of certain complaints filed with the Alabama State Board of Pharmacy; and evidence that other lawsuits had been filed against Harco alleging the improper filling of prescriptions; and
3) Whether the trial court erred in allowing Ms. Holloway to testify with respect to the mental anguish that she had claimed to have suffered when she discovered that she had been provided with the wrong medication.
With respect to the first issue, we note that Harco admitted negligence in misfilling Ms. Holloway's prescription. In doing so, it admitted that it had a duty to the Holloways; that it had breached that duty; and that the breach of that duty had proximately caused their damage. In IMAC Energy, Inc. v. Tittle, 590 So.2d 163, 169 (Ala. 1991), this Court stated:
"In considering the question whether the evidence of wantonness was sufficient to be submitted to the jury, this Court must accept as true the evidence most favorable to the plaintiff, and must indulge such reasonable inferences as the jury was free to draw from that evidence."
Ala.Code 1975, § 6-11-20(b)(3), defines "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Section 6-11-20(a) provides that punitive damages may be awarded in a tort action when it is proven by clear and convincing evidence that the defendant engaged in wantonness. Therefore, the question is whether the Holloways presented sufficient evidence that Harco acted with reckless disregard for the safety of others generally.
What evidence was before the jury when the trial court submitted the wantonness claim to the jury? There was evidence that (1) the prescription was illegible; (2) the pharmacist knew that the prescribing physician was an oncologist (a cancer specialist); (3) the pharmacist gave the plaintiff Tambocor, an antiarrhythmic drug used by cardiologists to treat arrhythmias and other serious heart ailments, Physicians' Desk Reference, 1387-88 (49th ed. 1995), although it is undisputed that the prescription actually called for Tamoxifen, a cancer fighting drug; (4) the pharmacist admitted that she realized at the time that she was giving the plaintiff Tambocor, a heart medication; (5) the pharmacist did not attempt to call the physician to verify the accuracy of her reading of the prescription and did not even try to question Ms. Holloway about why her oncologist was supposedly prescribing a heart medication for her; (6) the pharmacist did not re-read the prescription to verify the accuracy of her reading of it; (7) the prescription was again refilled incorrectly on two other occasions during a 5½ month period; (8) after Ms. Holloway heard a news report about cancer and the newest treatment for cancer, which included use of the drug Tamoxifen, which was not what Ms. Holloway had been taking for 5½ months, she inquired of Harco whether Tambocor was another name for Tamoxifen; and (9) only in that way was it determined that Harco had misfilled Ms. Holloway's prescription.
Although Harco argues that specialists regularly prescribe medicines for ailments outside their specialty, we believe that a prescription from an oncologist that a pharmacist believes to call for Tambocor, a heart medication used by cardiologists to treat arrhythmias or serious heart ailments, should cause her grave concern and necessarily prompt further inquiry. The extreme unusualness of a prescription from a cancer specialist supposedly calling for a dangerous heart medication, combined with the alleged illegibility of the prescription, is sufficient evidence of a reckless disregard of the safety of others to create a jury question as to whether Harco acted wantonly. A jury could infer that Harco's actions under those circumstances *881 rose to the level of a conscious or reckless disregard for the safety of Ms. Holloway.
As to the second issue, we note that the jury was also informed of 233 incident reports that had been prepared by Harco employees during the three years preceding the incident involving Ms. Holloway. Those reports dealt in some way or another with customer complaints of errors on the part of Harco employees in filling prescriptions, and the vast majority of them indicated that Harco employees had committed errors in filling prescriptions. This evidence, in addition to the evidence of complaints filed with the State Board of Pharmacy and the evidence of lawsuits filed alleging that Harco employees had misfilled prescriptions, was relevant to show Harco's knowledge of problems within its pharmacies and, thus, was admissible in connection with the wantonness claim, predicated upon Harco's having failed to initiate sufficient institutional controls over the manner in which prescriptions were filled.[1] See, e.g., Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1033 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994) (noting that the plaintiffs' wantonness claim was supported by evidence of, among other things, a wrongful death action, based on carbon monoxide poisoning caused by connection of a Kenmore II gas water heater to L.P. gas, that had been filed against the defendants); Surrency v. Harbison, 489 So.2d 1097, 1105 (Ala.1986) (evidence of prior acts may be considered in a wantonness case for the purpose of establishing intent).
With respect to the third issue, we find no merit in Harco's contention that Ms. Holloway lacked "a reasonable basis for her distress" at having received the wrong medication. Ms. Holloway was diagnosed with breast cancer that had spread to her lymph nodes. This was a potentially fatal condition. When she received her misfilled prescription, she had undergone surgery and chemotherapy treatments for the disease. Her physician had prescribed Tamoxifen as a part of an ongoing treatment for the cancer. Her physician testified that breast cancer can reappear up to 30 years after initial treatment and that medical studies had shown Tamoxifen to be effective in the treatment of breast cancer. It would defy logic for us to conclude that Ms. Holloway's learning, approximately 5½ months after the Tamoxifen had been prescribed, that her cancer treatment had been delayed because of the misfilling of her prescription did not provide "a reasonable basis for her distress." (As previously noted, it was only after Ms. Holloway heard a news report about the drug Tamoxifen being part of the newest treatment for cancer that she inquired of Harco whether Tambocor, the name of the drug she had been taking for 5½ months, was another name for Tamoxifen, that she found out that she had been taking a heart medication, not a drug to treat her cancer.) This case is distinguishable on its facts from those cases relied on by Harco, namely Thomas v. BSE Industrial Contractors, Inc., 624 So.2d 1041 (Ala.1993); Cain v. Armstrong World Industries, 785 F.Supp. 1448 (S.D.Ala.1992); and Toole v. McClintock, 778 F.Supp. 1543 (M.D.Ala.1991), judgment vacated, 999 F.2d 1430 (11th Cir.1993), wherein the plaintiffs' fear of contracting cancer (characterized as "cancerphobia" by Harco), although apparently real to them, was not sufficiently supported by the evidence. The trial court did not err in allowing Ms. Holloway to testify with respect to the mental anguish that she claimed to have *882 suffered when she discovered that she had been provided with the wrong medication.
OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, ALMON, and COOK, JJ., dissent.
HOUSTON, Justice (concurring specially).
I concur with the majority opinion. The Holloways sought to recover damages from Harco based 1) on allegations that Harco's pharmacist had acted wantonly in misfilling Ms. Holloway's prescription and 2) on allegations that Harco had failed to initiate sufficient institutional control over the manner in which prescriptions were filled in its stores. As the majority opinion notes, the evidence was clearly sufficient to create a jury question with respect to the pharmacist's conduct.[2] Harco's motion for a directed verdict was general in nature and the jury returned a general verdict for the Holloways; therefore, even assuming, as Harco contends, that the evidence was deficient as to the second claimthat Harco had failed to properly monitor its pharmaciesthere is no ground for reversal under the rationale of Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). Furthermore, the admission of the evidence of the incident reports provides no ground for reversal. The majority of those reports dealt in some way with customer complaints of errors on the part of Harco employees in filling prescriptions; they were, therefore, relevant with respect to the Holloways' claim that Harco had failed to properly monitor its pharmacies. See, e.g., BMW of North America, Inc. v. Gore, 646 So.2d 619 (Ala.1994) (evidence admitted to show that BMW had sold 983 vehicles throughout the United States without disclosing that it had refinished them). The jury's consideration of the few incident reports that did not concern errors by Harco employees in filling prescriptions, in my view, had no substantial impact on the verdict. Rule 45, Ala.R.App.P.
ALMON, Justice (dissenting).
The majority has withdrawn its original opinion and has substituted another opinion, still upholding a judgment that was based, at least as to the punitive damages award, on a jury finding of wantonness. The majority holds that a single act of misfilling a prescription by a pharmacist who, in 13 years of practice, had never before made a mistake, is sufficient evidence of wantonness. The majority reaches this holding principally on the basis that the prescription was signed by an oncologist but the pharmacist misread it as prescribing a heart medication. However, the undisputed evidence from the two pharmacists who testified was that it is possible for a specialist to prescribe a drug outside his specialty. The majority characterizes the drug that Ms. Holloway received as a "dangerous" heart medication, apparently to bolster its holding of wantonness.
Regardless of whether the majority is correct in holding that the single act of prescribing the wrong medication is sufficient evidence of wantonness, the judgment should be reversed because the circuit court erroneously admitted evidence of previous "incident reports" that permeated and tainted the entire trial. In its initial opinion, the majority relied on this evidence to support the judgment, but in its substituted opinion, the majority simply holds in passing that this evidence was admissible on the claim of *883 wantonness. This unexplained holding[3] does scant justice to the forceful arguments by Harco and by three amici who have filed briefs in support of Harco, all criticizing both the admission of this evidence and the holding that it supported the judgment.
The circuit court admitted evidence that Harco had received 233 incident reports in the three-year period leading up to the misfilling of Mrs. Holloway's prescription and evidence that Harco had considered, but had not implemented, a system of having a clerical worker verify, after a pharmacist had entered a prescription into the computer, that the pharmacist had read it correctly. If evidence such as this is admissible, then a business cannot undertake a review of its procedures except at peril that it will be held liable for wantonness for deciding against any procedure or improvement that might be suggested, no matter how impractical the suggestion might be. This holding of admissibility may tend to stifle self-review and efforts to improve a company's safety for fear that the very process of considering alternatives will make the failure to adopt them present a jury question on wantonness. I do not think such a rule is good policy.
The testimony was uncontroverted that Harco had filled between 15 and 16 million prescriptions during the three-year period in which there were the 233 incidents of misfilled prescriptions. This translates into a sixteen-ten-thousandths of a one percent chance (.0016%) that a prescription might be misfilled. The 233 incident reports were generated by Harco employees when a customer, for any reason, received medicine other than the medicine prescribed by the physician. Several of the incidents involved pharmacist errors, but others involved such problems as manufacturing errors and customers' picking up the wrong prescription bag when their names were called. Many or even most of the incidents, such as manufacturing errors and perhaps customers' picking up the wrong bag, would not have been caught by a clerical employee verifying the pharmacist's work. Most of these incidents were not shown to be similar to the misfilling of Ms. Holloway's prescription, and, to the extent they may have been similar, they tended to show that Harco had in place procedures for catching and correcting errors, not that Harco wantonly disregarded incidents of misfilled prescriptions.
Harco offered testimony that the incident reports upon which the plaintiffs relied were generated by Harco employees and were sent to the director of pharmacy operations for review. The director of pharmacy operations testified that he reviewed each report and counseled the pharmacist who misfilled the prescription. Occasionally a pharmacist would be transferred to a store with less volume if Harco believed that the pharmacist could perform better in a lower-volume store. Harco had relieved some pharmacists who could not adequately perform their duties. The Holloways offered no testimony to contradict the testimony of the Harco executives regarding the precautions that Harco took, and they offered no testimony that any other pharmacy employed clerical help to verify a trained professional pharmacist's work for accuracy.
*884 The fact that Harco discussed the idea of implementing a system of using clerical personnel to verify pharmacists' work but did not implement such a system is not evidence of wantonness, and it should not have been admitted as such. Rather, the evidence indicates to me that Harco had in place systems to detect pharmacist error when it occurred and took steps to prevent its repetition. Given the small number of errors compared to the large number of prescriptions filled, I do not think the 233 incident reports over three years or the consideration of, and decision not to implement, a system of having clerks inspect the work of pharmacists are evidence that Harco wantonly disregarded the safety of its customers.
Under the circumstances of this case, I think the circuit court should not have admitted the incident reports, because they did not tend to prove wantonness on the part of Harco.
For the reasons stated, I would reverse the judgment, because I think the circuit court erred in denying the Holloways' motions for directed verdict and JNOV on the wantonness claim. At a minimum, I would reverse the judgment because of the erroneous admission of the incident reports into evidence and remand the cause for a new trial.
MADDOX and COOK, JJ., concur.
NOTES
[1] In Robinson v. Kierce, 513 So.2d 1005 (Ala. 1987), this Court noted generally that the filing of a lawsuit raises no presumption as to the truthfulness of the allegations contained in the complaint. In the present case, however, the evidence of the filing of other lawsuits by Harco customers was admissible for the limited purpose of showing that Harco should have been aware that something was amiss in its pharmacy departments. (The jury was told only that certain customers had filed lawsuits and that those lawsuits involved allegations of misfilled prescriptions.) Although in a number of the incident reports Harco appears to have admitted responsibility for misfilling prescriptions, the evidence of the customer complaints admitted by the trial court, regardless of whether those complaints resulted in incident reports, in grievances filed with the State Board of Pharmacy, or in lawsuits, and regardless of whether Harco disputed or admitted responsibility for any wrongdoing with respect to those incidents, was admissible, because it was probative with respect to the issue of Harco's knowledge. This distinguishes this case from Robinson v. Kierce, supra.
[2] I agree with the characterization of Tambocor as a "dangerous" drug. Tambocor is an antiarrhythmic drug that can cause new or worsened supraventricular or ventricular arrhythmias. See Physician's Desk Reference (49th ed. 1995) ("PDR") p. 1388. The PDR at 1387 recommends that treatment with Tambocor be initiated in a hospital. Tambocor's use "should be reserved for patients in whom, in the opinion of the physician, the benefits of treatment outweigh the risks." PDR at 1387. "Federal law prohibits dispensing without prescription," PDR at 1390; in effect, Harco dispensed it "without prescription" when Harco provided it to Ms. Holloway. The "precautions," the "adverse reactions," and the most common adverse effects of Tambocor are set out in the PDR at 1388-89.
[3] The majority opinion, after generally stating that the reports were admissible, cites Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1033 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994), and Surrency v. Harbison, 489 So.2d 1097, 1105 (Ala.1986). Sears was a wrongful death action based on a product liability claim; it cited the rule that admission of evidence of other product liability claims to show notice of a defect ordinarily requires proof that earlier claims were based on products "in substantially the same condition as the product that is the subject of the action" (the Court did not reach the question of similarity of condition because it was not preserved for review). Here, there was no showing that the incident reports were based on incidents similar to that at issue hereon the contrary, the majority of the incidents clearly would not have been similar. This was one of the grounds of Harco's objection, and one of the reasons they should not have been admitted. Surrency v. Harbison was an assault and battery action in which Harbison, to prove that the defendant turned on a machine with intent to hit him, submitted evidence of prior incidents in which the defendant threatened or pushed him. Here, the incident reports do not concern prior misfillings by the same pharmacist or otherwise show an intent on the part of the defendant Harco to allow the misfilling of prescriptions. In fact, they show the oppositethat Harco instituted a system of control to correct and prevent negligent acts by its employees.