The claims upon which this appeal is based arise out of Appellees' blasting operations on Red Mountain in Birmingham, Alabama, during the months of June, July and August of 1978.[1]
Plaintiffs-Appellants are members of a residential community located on the slope of Red Mountain. Plaintiffs initiated these claims in 1979 in the district court, seeking compensation for property damage allegedly caused by Appellees' blasting operations during development of a condominium complex near the crest of the mountain.
Subsequent discovery revealed that the actual costs of repairs to Plaintiffs' residences were in excess of the jurisdictional amount of the district court ($5,000). By the time the amount of actual damages became known, however, expiration of the statute of limitations prevented dismissal and refiling of the actions in the circuit court. Consequently, Appellants amended their claims so as to remain within the district court's jurisdiction.
Upon a finding for Appellees in the district court, Appellants appealed to the circuit court and amended their complaints to claim their actual damages. Thereupon, the circuit court granted Appellees' objections to the amendments and motions to dismiss Count 1 of each of Appellants' complaints. Dismissal of Count 1 of each complaint was predicated upon grounds that it was based solely upon "strict liability" (Coalite, Inc. v. Aldridge, 285 Ala. 137, *Page 250 229 So.2d 539 (1969)), while denial of Appellants' amendments to the addamnum clauses was based upon ARCP 13 (j). We affirm as to the order denying the amendments; we reverse and remand as to the order dismissing Count 1 of each complaint.
 APPELLEES' CONTENTIONS FOR AN APPLICABLE LIABILITY STANDARD
Understandably, the position advanced by Appellees is a plea for application of the doctrine of stare decisis: To establish liability for damage allegedly caused by blasting operations, the burden is upon the Plaintiff to allege and prove that such damage was the result of Defendant's negligence and not the result of blasting conducted in accordance with usual methods and a reasonable standard of care. Mitchell v. Richardson,277 Ala. 651, 173 So.2d 814 (1964); Vulcan Materials Co. v. Grace,274 Ala. 653, 151 So.2d 229 (1963); Ledbetter-Johnson Co. v.Hawkins, 267 Ala. 458, 103 So.2d 748 (1958).
As a corollary, Appellees urge that strict liability is an unnecessary and unreasonable standard to impose in blasting cases in that: 1) Blasting is a reasonable and necessary activity in developing land, Cratty v. Samuel Aceto Co.,151 Me. 126, 116 A.2d 623 (1955); 2) Liability without fault is an unreasonable and unnecessarily restrictive doctrine,Klostermann v. Houston Geophysical Co., 315 S.W.2d 664
(Ct.App.Tex. 1958); 3) Rylands v. Fletcher, L.R. 3 H.L. 330 (1868), as proposed by Appellants, arguably adopts a negligence standard as opposed to one of strict liability, Toy v. AtlanticGulf Pacific Co., 176 Md. 197, 4 A.2d 757 (1939); 4) To apply a standard of liability without fault would amount to judicial legislation, Coalite, Inc. v. Weeks, 284 Ala. 219,224 So.2d 251 (1969); 5) Proof of negligence is not an unreasonable burden in blasting cases, Crawford Coal Co. v. Stephens,382 So.2d 536 (Ala. 1980).
 HISTORY
The history of this State's application of standards of liability in blasting cases is succinctly and aptly set forth in Appellants' brief:
 "Since 1907, persons injured or damaged . . . by the concussion or vibration caused by blasting have been without a remedy, unless they could show that the blaster was negligent in his blasting operations. In effect, blasters in Alabama have been allowed to cause injury and damage to surrounding property so long as they do it carefully. This . . . approach to liability for blasting is derived from traditional common law dichotomies of trespass/negligence (trespass on the case) and direct injury/indirect injury. These dichotomies may be explained as follows: If rocks are thrown onto plaintiff's property, there is a trespass because of the direct injury, and the defendant is liable without fault.[2]
If, however, the damage was caused by concussion in the air or vibration in the ground, the injury is caused indirectly, and the remedy lies in trespass on the case for which the plaintiff must prove negligence in the blasting.[3]"
See, also, Rendlemen, More on Procedure Reform, 33 Ala. Law. 37, 44 (1972).
A majority of states now characterize blasting, under certain conditions, as an abnormally dangerous activity and apply a strict liability approach for injury or damage caused thereby. Restatement (Second) of Torts, §§ 519-524A (1977). This Court, in Borland v. Sanders Lead Co., 369 So.2d 523 (Ala. 1979), hinted at the need to reconsider this State's application of the trespass/trespass on the case dichotomy associated *Page 251 
with damage caused by blasting operations.[4]
Under a traditional standard of negligence approach, the plaintiff must specifically show negligent conduct in the operative blasting procedures that proximately caused damage. In essence, the plaintiff's evidentiary hurdles are two-pronged: 1) proving that the defendant's conduct fell below the industry's acceptable standard of care; and 2) proving that such conduct proximately caused the damage suffered.
Both prongs of proof set the stage for a battle of the experts. The first prong, in the absence of statutory or regulatory guidelines, places the plaintiff's expert against the defendant's expert in a contest to determine the industry's empirical standard of care. Republic Steel Corp. v. Peoples,217 F.2d 236 (5th Cir. 1954).[5] The latter prong pits the plaintiff's evidence of before and after damage — in the context of circumstantial cause and effect — against the defendant's expert, who testifies that the damage is not the result of the blasting.
In light of the subjective nature of any scientific criteria, fostered by disagreement among industry experts, creation of an acceptable standard of conduct becomes extremely difficult. At any rate, the present status of the law, when strictly applied, leaves the fact finder bound by standards established and practiced by the very industry sought to be held accountable, and not by any consideration of the abnormally and inherently dangerous character of the instrumentality or substance employed and the intrinsic risk of harm to others.
In recognition of the harshness of the traditional negligence standard of liability, this Court has relaxed the requisite standard of proof in blasting cases. In Ledbetter-Johnson Co.v. Hawkins, 267 Ala. 458, 103 So.2d 748 (1958), a plaintiff's judgment was affirmed where the expert testimony showed only that if plaintiff's "damage was done . . . in the obtaining of chert from this pit by the use of dynamite . . ., it would be because it was not done properly, was done in a negligent manner." Admittedly, such conclusionary evidence, even by an expert — without any predicate as to the usual and customary practice in the industry or as to the manner in which defendant's conduct deviated therefrom — falls far short of the requisite standard of proof in traditional negligence cases. See, also, Crawford Coal Co. v. Stephens, 382 So.2d 536
(Ala. 1980), and the cases cited therein.
Additionally, this Court has consistently treated blasting claims as actions in trespass, thus applying absolute liability, where rocks or other debris were thrown upon plaintiff's property without any differentiation between the precise damage caused by the trespassing objects and any simultaneous damage caused by concussion or vibration. SeeMilford v. Tidwell, 276 Ala. 110, 159 So.2d 621 (1963); Exparte Birmingham Realty Co., 183 Ala. 444, 63 So. 67 (1913);Bessemer Coal, Iron and Land Co. v. Doak, 152 Ala. 166,44 So. 627 (1907).
While this accommodation to plaintiff's heavy burden of proof has not overtly altered the standard of liability, at the very least it has tended to treat the dangerous condition created by the ultrahazardous activity as the basis for testing the requisite proof of fault. Indeed, the Doak Court observed that where blasting takes place in the midst of "a thickly settled city," one "acts at his peril." *Page 252 
 STRICT LIABILITY IN TORT
In the now famous case of Rylands v. Fletcher, supra, the defendants were mill owners who had constructed a reservoir on their land. Water escaped therefrom into an abandoned coal mine through connecting passages and into the adjoining mine of the plaintiff. In the absence of trespass (the flooding damage being indirect) or the existence of any nuisance, the English court applied the doctrine of strict liability in tort to hold defendants liable, saying:
 "We think that the true rule of law is that the person who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and if he does not do so is prima facie answerable for all the damage which is the natural consequence of its escape."
Fletcher v. Rylands, L.R. 1 Ex. 265, 279-80 (1866).
This holding was somewhat restricted upon review by the House of Lords, wherein the strict liability principle was made applicable only to "non-natural" uses of defendant's land, as distinguished from "any purpose for which it might in the ordinary course of the enjoyment of land be used." Rylands v.Fletcher, supra.
"After a long period during which Rylands v. Fletcher was rejected by the large majority of American courts which considered it, the pendulum has swung to acceptance of the case and its doctrine in the United States." W. Prosser, Handbook ofthe Law of Torts, § 78 (4th ed. 1971).
Adherence to the strict liability doctrine has been approved by the Restatement (Second) of Torts (1977), § 519 of which provides:
 (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
 (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.
 AN ABNORMALLY DANGEROUS ACTIVITY CONSTITUTES NEGLIGENCE
We believe our adoption of the Restatement lightens the requisite burden of proof without abandoning the time-honored fault philosophy. Whether we adopt, by name, strict liability in tort for damages caused by blasting operations, or whether we perceive our holding as a mere expansion of prior cases, is relatively unimportant. What is important, in our view, is the preservation of our fault-based tort concept in the context of a modified standard of liability which no longer perpetuates what Professor Prosser terms "a marriage of legal technicalities with scientific ignorance." W. Prosser, Handbookof the Law of Torts, § 78 (4th ed. 1971).
The fault concept is preserved simply by transposing the basis for testing culpability from the degree of care exercised in the manner in which the blasting operation is conducted to
the conduct of the blaster in carrying on an abnormally dangerous activity which subjects innocent parties to an unreasonable risk of harm. To treat the discharge of an abnormally dangerous substance under ultrahazardous conditions as wrongful conduct is not violative of the duty/breach of duty principle of tort law. The use of the explosives under abnormally dangerous conditions is negligence, and thus actionable if such conduct proximately causes damage to another.
Our holding today is strikingly similar, both in kind and degree, to the Alabama extended manufacturer's liability doctrine. Casrell v. Altec Industries, Inc., 335 So.2d 128
(Ala. 1976); Atkins v. American Motors Corp., 335 So.2d 134
(Ala. 1976). There, we lessened the consumer's burden of proof, but retained the fault concept, by transposing the basis for testing culpability from the degree of care exercised in the manufacturing process to the product's defective condition at the time of sale. Here, we simply shift the culpability test from the degree of care exercised in the discharge of *Page 253 
the explosives to the carrying on of an abnormally dangerous activity. See Henderson v. Wade Sand and Gravel Co., Inc.,388 So.2d 900 (Ala. 1980), which altered the requisite burden of proof from that of traditional negligence to that of nuisance in the context of property damage caused by a continuing activity involving use of underground water.
While our law no longer permits, as a defense, proof of the degree of care with which a defective product was made and sold to the public, neither will it permit the blaster to defend on the ground that he carefully prepared and detonated the explosive. In either case, to carefully injure another is no longer an acceptable exercise of one's legal duty of due care.
In neither case, however, is the claimant exempt from definitive standards of proof both as to culpability and as to proximate cause. Just as the plaintiff must prove the defective condition of the product and an injury or damage proximately resulting therefrom, one claiming blasting damage can establish liability of the blaster only by proving that such damage is the proximate result of an abnormally dangerous activity.
 AN ABNORMALLY DANGEROUS ACTIVITY
The Restatement (Second) of Torts, § 520 (1977), sets forth the following factors to be considered in determining whether an activity is abnormally dangerous:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 (b) likelihood that the harm that results from it will be great;
 (c) inability to eliminate the risk by the exercise of reasonable care;
 (d) extent to which the activity is not a matter of common usage;
 (e) inappropriateness of the activity to the place where it is carried on; and
 (f) extent to which its value to the community is outweighed by its dangerous attributes.
It is apparent that liability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity. Restatement (Second) of Torts, § 519, Comment d (1977). The basis for liability is that one who for his own purposes creates an abnormal risk of harm to his neighbors must be responsible for relieving that harm when in fact it does occur. Id.
The rule of strict liability, however, only applies to that harm which is within the scope of the abnormal risk upon which liability is based. In other words, one who detonates explosives on his own property may be responsible for the risk of harm to persons or property in the vicinity. If, however, no explosion takes place, but someone trips over the dynamite and breaks a leg, strict liability will not apply. Restatement (Second) of Torts, § 519, Comment e (1977).
Our adoption of the Restatement is not a holding that the mere act of blasting — anytime, anywhere — will subject one to liability without fault. The Restatement (Second) of Torts, § 519 (1977), speaks of "abnormally dangerous activities." Thereafter, § 520 provides guidelines against which to test the appropriateness of the blasting operations. Each case will present its own set of facts against which the § 520 guidelines will apply.[6]
A finding, guided by a consideration of factors outlined in the Restatement, that the blaster was "one who carries on an abnormally dangerous activity" is a finding of negligence — the breach of a legal duty — and, a further finding that such conduct proximately damaged another, renders the blaster liable therefor. Ordinarily, both of these determinations will be issues of fact for the jury.[7] *Page 254 
We hold, therefore, that the trial judge's dismissal of Count 1 of each of Appellants' complaints was reversible error.
 AD DAMNUM CLAUSE AMENDMENTS
The trial court's rejection of claimants' offered amendments to increase their prayer for damages above the jurisdictional level of the district court is mandated by ARCP 13 (j). Plaintiffs had the right to claim only a portion of their damages in order to remain within the jurisdiction of the district court; but, by doing so, they destroyed their right, on appeal to the circuit court, to claim the excess. See Hardyv. Tabor, 369 So.2d 559 (Ala.Civ.App. 1979).
The constitutional issue raised by Appellants is without merit. Therefore, that portion of the trial court's order sustaining the Appellees' objection to Appellants' amendments is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., dissent.
[1] Five separate claims were consolidated in the trial court and on appeal.
[2] See, e.g., Coalite Inc. v. Weeks, 284 Ala. 219, 224 So.2d 251
(1969); Milford v. Tidwell, 276 Ala. 110, 159 So.2d 621 (1963);Vulcan Materials Co. v. Grace, 274 Ala. 653, 151 So.2d 229
(1963); Central Iron Coal Co. v. Vandenheuk, 147 Ala. 546,41 So. 145 (1906).
[3] See, e.g., Lehigh Portland Cement Co. v. Dobbins, 282 Ala. 513, 213 So.2d 246 (1968); Vulcan Materials Co. v. Grace,274 Ala. 653, 151 So.2d 229 (1963); Bessemer Coal, Iron Land Co.v. Doak, 152 Ala. 166, 44 So. 627 (1907).
[4] We note with interest that the legal scholars' debate in this field centers not on the trespass/trespass on the case dichotomy; rather, as J. Fleming, The Law of Torts 40 (4th ed. 1971), states:
 "In many American blasting cases, it has been held that damage from flying rocks is trespass, but from vibration or concussion at most nuisance. This proposition, which has been castigated as a marriage of legal technicality with scientific ignorance, is nonetheless commendable because any encroachment of trespass on the field traditionally occupied by nuisance would lead to undesirable restrictions on users of land." (Emphasis added.)
[5] Blasting regulations are specifically promulgated under the Coal Surface Mining Reclamation Act in § 9-16-41, Code 1975. Of course, those in the blasting industry argue that these regulations are far too restrictive to apply in any context other than mining.
[6] Because of its utility in the management of a blasting case in the trial court, we append hereto a copy of the Restatement (Second) of Torts, §§ 519 and 520, with Comments.
[7] We note that this aspect of our holding, particularly the determination of the issue of "abnormally dangerous activity," is at odds with Comment (1) of the Restatement. Consistent with our holdings in Casrell and Atkins, we adhere to the traditional rule of submitting both the issue of culpability and proximate cause to the jury except where no dispute of fact is presented on the issue by the evidence.