S.B. Thompson and several other individuals (all hereinafter referred to as "Thompson"), who lived near a battery-recycling facility, filed a complaint seeking recovery for personal injuries and property damage arising from alleged lead contamination. Although Thompson sued the operator of the recycling facility, which Thompson alleged had allowed lead to escape onto Thompson's property, as well as several businesses from which the recycling facility[1] had obtained batteries ("Sellers"),[2] this appeal involves only Thompson's claims against the Sellers. The trial court entered a summary judgment in favor of the Sellers on Thompson's claims of (1) strict liability, (2) negligent entrustment, and (3) negligence. We hold that Thompson failed to present substantial evidence creating a genuine issue of material fact as to any of his claims. Thomas v. Principal Financial Group, 566 So.2d 735, 738
(Ala. 1990). We therefore affirm.
 I.
On review of a summary judgment, we view the evidence in the light most favorable to the nonmovant, in this case, Thompson.Bogle v. Scheer, 512 So.2d 1336 (Ala. 1987). So viewed, the evidence suggests the following facts: From approximately 1978 through 1991, the recycling facility operated in Birmingham. It purchased and picked up used whole batteries from various sources, including the Sellers.[3] The batteries were dismantled at the recycling facility and the recovered lead was sold.
The Sellers transferred complete ownership of the batteries to the recycling facility and had no control over the operations of the recycling facility with respect to the batteries or otherwise. Although the recycling facility had been cited by the Alabama Department of Environmental Management ("ADEM") for certain environmental violations, neither ADEM nor the federal Environmental Protection Agency ("EPA") had contacted the Sellers and informed them of any environmental problems before they sold the batteries.
 II.
Congress has enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). 42 U.S.C. § 9601-9675 (1988). CERCLA greatly expanded liability beyond that provided by the common law, imposing liability for clean-up costs. See 42 U.S.C. § 9607 (1988). Thompson would have this Court expand the common law to, in effect, append private causes of action onto CERCLA. But seeExxon Corp. v. Hunt, 475 U.S. 355, 357, 106 S.Ct. 1103, 1106,89 L.Ed.2d 364 (1986) (stating that compensation of "third parties for damage resulting from hazardous substance discharges . . . is clearly beyond the scope of CERCLA"). We decline to accept Thompson's invitation to judicially amend federal environmental laws, when both Congress and the Alabama Legislature remain free to provide private rights of action for environmental damage if they choose to do so.
 III. A.
Thompson argues that this Court should expand the common law doctrine of *Page 807 
strict liability to encompass the sale of batteries to the recycling facility. In Harper v. Regency Development Co.,399 So.2d 248, 253 (Ala. 1981), this Court held that "[strict] liability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity." (Emphasis added) (citing Restatement (Second) of Torts, § 519, cmt. d (1977)). For example, the use of high explosives near a populated area is an ultrahazardous activity because reasonable care cannot eliminate the danger inherent in that activity.Harper, 399 So.2d at 253-54. In contrast, the sale of firearms in and of itself has been held not to constitute an ultrahazardous activity. See Hammond v. Colt Indus. Oper.Corp., 565 A.2d 558, 562-63 (Del.Super. 1989) (refusing to apply strict liability concept in the Restatement of Torts to sale of firearms because the sale of the products, as opposed to their use, is not abnormally dangerous). The sale of whole batteries is even less hazardous than the sale of firearms, and it certainly is not an ultrahazardous activity. The lead contamination alleged by Thompson did not result from the sale of the batteries. Instead, it came from the operations conducted by the recycling facility. Consequently, this claim is without merit.
 B.
Thompson also argues that this Court should expand the common law action of negligent entrustment to allow him to recover personal damages from the Sellers, because of their sale of whole batteries to the recycling facility. Under Alabama law, the essential elements of a cause of action for negligent entrustment are: (1) an entrustment (2) to an incompetent (3) with knowledge that he is incompetent, (4) proximate cause, and (5) damage. Dunaway v. King, 510 So.2d 543, 545 (Ala. 1987);Wilbanks v. Brazil, 425 So.2d 1123, 1124 (Ala. 1983). To "entrust" property to another, as opposed to transferring it permanently, one must retain either ownership of the property or dominion and control over it. Land v. Niehaus,340 So.2d 760, 762 (Ala. 1976). If a party "transfer[s] . . . ownership [of property] to the buyer or donee and relinquish[es] . . . control or dominion over the property," there is no entrustment. Oates v. Chris Meyers Pontiac-GMC, Inc.,583 So.2d 1335, 1336 (Ala. 1991) (emphasis omitted); Land v. Niehaus,340 So.2d 760 (Ala. 1976). It is undisputed that the Sellers in this case transferred their complete ownership interests in the batteries and retained no dominion or control over them. Thus, there was no entrustment, negligent or otherwise.
 C.
Finally, Thompson argues that we should expand the common law negligence action to impose a duty on the Sellers not to sell whole batteries to the recycling facility. "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." Morton v. Prescott,564 So.2d 913, 915 (Ala. 1990). A legal duty arises either from the common law or from a statute. Graveman v. Wind Drift Owners' Ass'n,Inc., 607 So.2d 199, 203 (Ala. 1992).
Thompson asserts that a common law duty not to sell the batteries to the recycling facility arose from the foreseeability of the alleged contamination that occurred there. See E.H. v. Overlook Mountain Lodge, 638 So.2d 781, 783
(Ala. 1994) (holding that clear foreseeability of harm is essential in determining whether a duty to prevent that harm exists). He argues that his injuries were clearly foreseeable by the Sellers because (1) the Sellers were aware of general federal environmental liability arising from the disposal of certain wastes, including batteries, (2) ADEM's public files contained certain references to environmental problems at the recycling facility, and (3) it would have been easy for the Sellers to contact ADEM and determine if the recycling facility was in compliance with state environmental laws.[4] *Page 808 
Thompson relies for his argument on Kelly v. M. TriggEnterprises, Inc., 605 So.2d 1185 (Ala. 1992). In Kelly, id. at 1187-89, the manufacturer and the seller marketed a spray air freshener composed solely of ethyl chloride. A 16-year-old girl obtained the air freshener for the purpose of inhaling it to become intoxicated. See id. at 1187. The propensity to intoxicate directly prompted the purchase for misuse. In this case, however, a commercial enterprise purchased the automobile batteries for the purpose of recovering the lead contained in them. The possibility of contaminating land adjoining the recycling facility did not prompt the purchase. Accordingly, the direct foreseeability of misuse is absent in this case. The Sellers, therefore, had no duty to protect Thompson from the potentially harmful actions allegedly occurring at the recycling facility.[5] Overlook Mountain Lodge, 638 So.2d at 783.
The summary judgment in favor of the Sellers is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, and COOK, JJ., concur.
KENNEDY, J., concurs in the result.
[1] The term "recycling facility," as used in this opinion, refers to both the operator of the facility and the physical facility itself.
[2] Since Thompson filed his briefs in this appeal, he has settled his claims against several of the defendants, including Norfolk Southern Railway Company and Exide Corporation. Accordingly, the term "Sellers," as used in this opinion, includes only those parties still active in the litigation.
[3] None of the Sellers manufactured batteries.
[4] We decline Thompson's invitation to impose on sellers of automotive parts that may potentially pollute, a common law tort duty to search the public records to determine if the buyer is complying with CERCLA or state environmental laws. SeeUpton v. Mississippi Valley Title Ins. Co., 469 So.2d 548, 557
(Ala. 1985) (refusing to extend scope of title insurance company's duty to search public records beyond those records specified in the contract of title insurance); Bedwell LumberCo. v. T T Corp., 386 So.2d 413, 415 (Ala. 1980) (refusing to impose on the purchaser of real property lots a duty to search county health department records for disapproval of lots for septic tank placement).
[5] We note that the concepts of reasonable care and foreseeability are foreign to CERCLA. See United States v.Monsanto Co., 858 F.2d 160, 168 (4th Cir. 1988) ("The traditional elements of tort culpability on which the site-owners rely simply are absent from the statute."), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). This is because Congress did not design CERCLA to compensate for private damages, but to pay for clean-up costs. See Satskyv. Paramount Communications, Inc., 7 F.3d 1464, 1469 (10th Cir. 1993) (stating that "both houses of Congress considered and rejected any provision for recovery of private damages unrelated to the cleanup effort, including medical expenses") (quoting Daigle v. Shell Oil Co., 972 F.2d 1527, 1535 (10th Cir. 1992)).