BOLIN, Justice.
Roland Crouch and Sandra Crouch appeal from a summary judgment in favor of North Alabama Sand & Gravel, LLC, now operating as Alliance Sand & Gravel, LLC,[1] and Austin Powder Company (“Austin Powder”) on the Crouches’ claim asserting property damage resulting from Alliance Sand & Gravel’s blasting operations. We affirm in part and reverse in part.

I. Facts and Procedural History

Alliance Sand & Gravel owns and operates a sand and gravel quarry in Franklin. Alliance Sand & Gravel has used blasting to loosen the sand and gravel at its quarry since 2004. Austin Powder has performed the blasting for Alliance Sand & Gravel since 2005; the blasting is monitored by the. use of seismographs. According to Alliance Sand & Gravel, it has performed approximately one blast per month since September 2004 and has never received a citation or a regulatory penalty as a result of its blasting operations.
*203 On December 5, 2006, the Crouches sued Alliance Sand & Gravel and Austin Powder (hereinafter referred to collectively as “Alliance”), seeking compensation for damage to their property, which, they say, was caused by Alliance’s blasting operations.[2] According to the Crouches, their house was in excellent condition before Alliance started its blasting and the blasting caused extensive damage to their house and diminished its value. The Crouches specifically alleged that Alliance conducted its blasting operations in a negligent and wanton manner; that it trespassed and/or created a nuisance by interfering with the Crouches’ possession, use, and enjoyment of their property; and that it engaged in an abnormally dangerous activity for which it is strictly liable. Alliance moved for a summary judgment against the Crouches, pursuant to Rule 56(c), Ala. R. Civ. P.; the trial court granted Alliance’s motion, and it certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.[3] The Crouches appeal.

II. Standard of Review

“In reviewing a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Manners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).”
Johnson v. Sorensen, 914 So.2d 830, 833 (Ala.2005).

*204
III. Analysis

A. Abnormally Dangerous Activity

In Harper v. Regency Development Co., 399 So.2d 248 (Ala.1981), this Court adopted the doctrine set out in the Restatement (Second) of Torts § 519 (1977), which imposes strict liability upon one carrying on an abnormally dangerous activity that results in damage to the property of another. In Birmingham Coal & Coke Co. v. Johnson, 10 So.3d 993, 996-97 (Ala.2008), this Court, elaborating on Harper, stated:
“Liability in blasting cases is governed by the principles established in Harper v. Regency Development Co., 399 So.2d 248 (Ala.1981). In that case this Court abandoned the application of traditional negligence principles in blasting cases and adopted a test based on the Restatement (Second) of Torts §§ 519-520 (1977). The Restatement (Second) of Torts § 519 provides:
“ ‘(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
“ ‘(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.’
“The Restatement (Second) of Torts § 520 lists the following factors as those that should be considered in determining whether án activity is abnormally dangerous:
“ ‘(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
“‘(b) likelihood that the harm that results will be great;
“ ‘(c) inability to eliminate the risk by the exercise of reasonable care;
“ ‘(d) extent to which the activity is not a matter of common usage;
“ ‘(e) inappropriateness of the activity to the place where it is carried on; and
“ ‘(f) extent to which its value to the community is outweighed by its dangerous attributes.’
“This Court concluded in Harper that ‘[t]he use of the explosives under abnormally dangerous conditions is negligence, and thus actionable if such conduct proximately causes damage to another.’ Harper, 399 So.2d at 252. This Court further held:
“ ‘A finding, guided by a consideration of factors outlined in the Restatement, that the blaster was “one who carries on an abnormally dangerous activity” is a finding of negligence — the breach of a legal duty— and, a further finding that such conduct proximately damaged another, renders the blaster liable therefor. Ordinarily, both of these determinations will be issues of fact for the jury.’[4]
“Harper, 399 So.2d at 253. This Court further stated that the law will not ‘permit the blaster to defend on the ground *205 that he carefully prepared and detonated the explosive.’ Id."
(Some emphasis added.)
In support of its motion for a summary judgment, Alliance asserted that it did not perform its blasting operations under abnormally dangerous conditions, that its blasting was performed with reasonable care and within the standards provided by government and industry sources, and that its blasting did not cause the damage the Crouches claimed it caused to their property. Alliance submitted the affidavit of its expert, Fred M. Nicol, who had reviewed Alliance’s blasting reports and seismic records and opined that it was physically and scientifically impossible for the blasting to have damaged the Crouches’ house. Alliance also states that it relied on the deposition testimony of Carl Mote, an expert who was deposed on behalf of another plaintiff in this action — not the Crouches.[5] According to Alliance, Mote’s testimony established that he had “no criticism with the manner in which [Alliance] conducted its blasting” and that Mote “declined to provide an opinion that blasting was the .cause of [the Crouches’] damages in this case.” A closer look at Mote’s testimony demonstrates that Mote was retained as an expert, not to render an opinion as to Alliance’s blasting but to provide testimony regarding blasting in general. Mote stated in his deposition that he had been retained as an expert to give an opinion on blasting but not to provide any criticism of Alliance’s blasting specifically. He testified that he had no analysis or opinions relative to the location, size, or any characteristics of Alliance’s blasts; that he had not reviewed any of the seismic data associated with Alliance’s blasting operations; and that he did not know who monitored the seismic data associated with Alliance’s blasting operations. Thus, Mote’s testimony does not appear to support Alliance’s earlier asserted contentions that its blasting was performed under safe conditions and that its blasting was not the cause of the damage to the Crouches’ house. Furthermore, as stated in Harper, the law will not “permit the blaster to defend on the ground that he carefully prepared and detonated the explosive.” 399 So.2d at 253. See also Birmingham Coal, rejecting Birmingham Coal’s defense that its blasting was conducted according to State regulations. 10 So.3d at 997.
In response to Alliance’s motion for a summary judgment, the Crouches argued that their house, which was located less than one mile from the blasting site, was in excellent condition before Alliance started its blasting operations. Although Mr. Crouch testified that he could hear the blasts from outside his house, he placed more emphasis on the vibrations from the blasting, which he alleges caused the damage to his house. Mr. Crouch stated in his deposition that the blasting felt like an earthquake and that, on one particular day, the blasting “about shook [his] house off the mountain,” causing his entire house to move. Mr. Crouch described the physical damage to his house that, he says, occurred after Alliance started its blasting operations: drywall had fallen out of the ceiling, pictures had fallen off the walls, a chandelier had almost pulled out of the ceiling, windows had broken, bricks had fallen out of the windowsills, “cracks” had appeared in the house, including the porches, and floors had buckled. The Crouches submitted with their response the affidavit of their son, Jonathon Crouch, a contractor, who stated:
*206 “Since [Alliance] started blasting about 10 years ago, the vibrations to my parents’ house have caused significant damage. As recently as last summer, of 2013, I was hired by my parents to do major renovations. The main reason they were having renovations done was because the shaking of the house from the blasts had caused water to leak into the house. The basement had become infiltrated with black mold, which was aggravating my Dad’s [chronic obstructive pulmonary disease], as well as making my Mom sick too. They spent about $50,000 on the renovations, and it would have cost more if I had not been providing them with a family discount of sorts. “I am not a blasting expert, but it is only logical that the damage[] to the house that I saw and sought to repair, [was] most likely caused by the house being shook by the blasting at [Alliance], which is less than a mile away.”
The trial court did not include any findings of fact or explain its basis for entering the summary judgment in favor of Alliance. According to Alliance, the trial court entered a summary judgment in its favor because the Crouches failed to offer any expert testimony that Alliance had performed its blasting under abnormally dangerous conditions; Alliance contends that the Crouches were required to offer evidence regarding the Restatement § 520 guidelines listed in Harper in determining whether its blasting constituted an abnormally dangerous activity. As noted in Harper, however, “[e]ach case will present its own set of facts against which the § 520 guidelines will apply,” and, “[a] finding, guided by a consideration of factors outlined in the Restatement, that the blaster was ‘one who carries on an abnormally dangerous activity’ ” is an “issue[ ] of fact for the jury.” 399 So.2d at 253.
In Harper, this Court stated:
“Both prongs of proof [of the traditional negligence standard[6] ] set the stage for a battle of the experts. The first prong, in the absence of statutory or regulatory guidelines, places the . plaintiff’s expert against the defendant’s expert in a contest to determine the industry’s empirical standard of care. Republic Steel Corp. v. Peoples, 217 F.2d 236 (5th Cir.1954). The latter prong pits the plaintiffs evidence of before and after damage — in the context of circumstantial cause and effect— against the defendant’s expert, who testifies that the damage is not the result of the blasting.
“In light of the subjective nature of any scientific criteria, fostered by disagreement among industry experts, creation of an acceptable standard of conduct becomes extremely difficult....

“In recognition of the harshness of the traditional negligence standard of lia: bility, the Court has relaxed the requisite standard of proof in blasting cases.”

399 So.2d at 251 (emphasis added). Cases subsequent to Harper have concluded that a plaintiff in a blasting case is not always required to offer expert testimony on the issue of causation. See, e.g., Birmingham Coal (affirming an award of damages in a blasting case where the plaintiffs did not offer expert testimony linking the damages to damage to their houses, but instead presented evidence of hearing the blasts, of feeling vibrations from the blast *207 ing in their houses, and of noticing damage to their houses after the blasting began). See also McCuller v. Drummond Co., 714 So.2d 298, 299 (Ala.Civ.App.1997)(holding that McCuller presented substantial evidence creating a genuine issue of material fact as to whether Drummond’s blasting was the cause of the damage to McCuller’s house where “McCuller testified that Drummond’s blasting could be felt in his home, and he presented evidence that the extent of the damage done to his home goes beyond normal shrinkage or wear and tear. Craig Ledbetter, a construction management consultant, said in his deposition that although he is not an expert in blasting, he could say that the damage to McCuller’s home was consistent with blasting damage.”). In this case, the Crouches presented evidence indicating that they could hear the blasts while they were outside their house and that they could feel the vibrations from the blasting in their house, and they described the damage to their house that they say occurred after Alliance began blasting. The Crouches’ son, a contractor, also opined in his affidavit that the damage to his parents’ house was most likely caused by blasting vibrations. In viewing the evidence in a light most favorable to the Crouches, as we must, Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990), we conclude that they presented substantial evidence creating a genuine issue of material fact regarding whether Alliance’s blasting was performed under abnormally dangerous conditions and whether the blasting was the cause of the damage to the Crouches’ house. Again, as stated in Harper, the questions whether the defendant is engaged in an abnormally dangerous activity, guided by a consideration of the factors outlined in Restatement (Second) of Torts § 520, and whether there is proximate causation, will normally be questions for the jury. Both the issue of culpability and the issue of causation should be submitted to the jury “except where no dispute of fact is presented on the issue by the evidence.” 899 So.2d at 258 n. 7. Because the evidence in this case is not without dispute, the trial court erred in entering a summary judgment for Alliance on the Crouches’ ab'normally-dangerous-activity claim.

B. Wantonness

The Crouches argue that the trial court improperly entered the summary judgment on their wantonness claim. We agree. Section 6 — 11—20(b)(3), Ala.Code 1975, defines “wantonness” as “[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others.” In IMAC Energy, Inc. v. Tittle, 590 So.2d 163 (Ala.1991), this Court stated, regarding wantonness in the context of a blasting case:
“Wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury. Wantonness may arise from knowledge that persons are likely to be in a position of danger. This knowledge need not be shown by direct proof, but, like any other fact, may be shown by circumstances from which the fact of actual knowledge is a legitimate inference. Bishop v. Poore, 475 So.2d 486 (Ala.1985).
“In considering the question whether the evidence of wantonness was sufficient to be submitted to the jury, this Court must accept as true the evidence most favorable to the plaintiff, and must indulge such reasonable inferences as the jury was free to draw from that evidence. Jackson v. Cook, 275 Ala. 151, 153 So.2d 229 (1963). A wantonness count should go to the jury if there is any evidence to support a finding of *208 wantonness. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972). See Bishop, 475 So.2d at 487.
“The Tittles presented evidence that IMAC was well aware of the Tittles’ complaints, yet continued its blasting operations for another two years. Ronnie Tittle testified that on several occasions he personally went to IMAC’s mine site to complain about the blasting. After a review of the record, we hold that the Tittles presented sufficient evidence of wantonness to support the jury’s award of punitive damages for IMAC’s damage to the Tittles’ real property.”
590 So.2d at 169 (emphasis added).
In this case, it is undisputed that Alliance performed its blasting operations less than a mile from the Crouches’ house.[7] Mr. Crouch testified in his deposition that he had “been over to that plant ... 20 or 30 times asking them to quit blasting” because they were “tearing [up his house].” Mr. Crouch testified that, on one occasion, he traveled to Decatur to talk to Rodney Terry, who is either the owner or manager of Alliance Sand & Gravel. According to Mr. Crouch, Terry stated that he did not think his company’s blasting had caused the damage to the Crouches’ house, and he “challenged” Mr. Crouch to sue Alliance. Mr. Crouch also testified that he had met numerous times with Billy Richardson, the plant manager at Alliance Sand & Gravel; that he had shown Richardson pictures of the damage to his house; that Richardson visited the Couches’ house on several occasions; that Richardson observed the damage to the house; that Richardson opined that the damage to the house was caused by Alliance’s blasting; and that Richardson had told him that Alliance’s blasting had also caused damage to other houses in the area and that the Crouches needed to consult with an attorney. Like the plaintiffs in IMAC Energy, the Crouches presented sufficient evidence that Alliance was well aware of their complaints, yet it ignored those complaints and continued its blasting operations and, according to Mr. Crouch, challenged him to sue. See Roberts v. Brown, 384 So.2d 1047, 1048 (Ala.1980) (“The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence — it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference-”). In viewing the evidence in a light most favorable to the Crouches, we conclude that they provided sufficient evidence warranting submission of their wantonness claim to a jury. Accordingly, the summary judgment is reversed insofar as it relates to the Crouches’ wantonness claim.

C. Nuisance

The Crouches also claim that they presented substantial evidence that Alliance’s blasting operations created a nuisance by interfering with their use and enjoyment of their property. See Borland v. Sanders Lead Co., 369 So.2d 523, 529-30 (Ala.1979) (holding that the law of nuisance applies, in the traditional sense, where there is interference with the use and enjoyment of one’s property). Specifically, the Crouches claim that Alliance’s blasting operations (1) caused major damage to their house, (2) affected their day-to-day activities, (3) affected their ability and willingness to entertain, (4) affected their entire lifestyle, (5) caused Mrs. Crouch to become a “nervous wreck” and made her “ill,” (6) aggravated Mr. Crouch’s chronic obstructive pulmonary disease, (7) fright *209 ened their children to the point of crying over what they believed were earthquakes, (8) caused Mr. Crouch to become “disgusted,” and (9) caused marital problems between them.
In Hilliard v. City of Huntsville Electric Utility Board, 599 So.2d 1108, 1112-13 (Ala.1992), this Court stated, regarding a nuisance claim:
“Section 6-5-120, Ala.Code 1975, defines nuisance as ‘anything that works hurt, inconvenience or damage to another.’ This Court has construed this statute to be declaratory of the common law of nuisance. Lauderdale County Bd. of Educ. v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959). Further, this Court has stated that the ‘anything’ referred to in § 6-5-120
“ ‘may consist of conduct that is intentional, unintentional, or negligent. Indeed, it may even consist of activities that are conducted in an otherwise lawful and careful manner, as well as conduct that combines with the culpable act of another, so long as it works hurt, inconvenience, or damage to the complaining party.
“ ‘This does not mean, however, that the plaintiff is not required to prove against the defendant the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for. That which works hurt to another, to satisfy the statutory definition of a nuisance, must comport with the classical tort concepts of duty and causation.’
“Tipler v. McKenzie Tank Lines, 547 So.2d 438, 440 (Ala.1989). (Citations omitted.)
“Thus, for an action in nuisance under § 6-5-120, Ala.Code, 1975, the plaintiff must show conduct, be it intentional, unintentional, or negligent, on the defendant’s part, which was the breach of a legal duty, and which factually and proximately caused the complained-of hurt, inconvenience, or damage. Because we have found, above, that Hilli-ard presented sufficient evidence on the elements of his negligence claim to submit that claim to the jury, we hold that Hilliard’s nuisance claim also should be submitted to the jury.”
(Emphasis added.) Additionally, in Morgan Concrete Co. v. Tanner, 374 So.2d 1344, 1346 (Ala.1979), this Court stated, regarding a private nuisance:
“ ‘The essence of private nuisance is an interference with the use and enjoyment of land_ So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person, virtually any disturbance to the enjoyment of property may amount to a nuisance.’ W. Prosser, Handbook of the Law of Torts § 89, at 591-93 (4th ed.1971). Accordingly, this court has often stated that any establishment erected on one’s premises, though for the purposes of a lawful trade or business, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another or produces material annoyance or inconvenience to the occupants of adjacent dwellings rendering them physically uncomfortable, is a nuisance. In applying this principle it has been repeatedly held that smoke, offensive odors, noise, or vibrations of such degree or extent as to materially interfere with the ordinary comfort of human existence will constitute a nuisance. Baldwin v. McClendon, 292 Ala. 43, 288 So.2d 761 (1974); Coleman v. Estes, 281 Ala. 234, 201 So.2d 391 (1967).”
(Emphasis added.)
In viewing the evidence in a light most favorable to the Crouches, we con- *210 elude that they provided sufficient evidence warranting the submission of their nuisance claim to a jury. As previously indicated: “The use of explosives under abnormally dangerous conditions is negligence, and thus actionable if such.conduct proximately causes damage to another.” Harper, 399 So.2d at 252. See also Terrell v. Alabama Water Serv. Co., 245 Ala. 68, 70, 15 So.2d 727, 729 (1943) (“[A] nuisance may be and frequently is the consequence of negligence, or the same acts or omissions which constitute negligence may give rise to a nuisance.”). Accordingly, the summary judgment in favor of Alliance is also reversed insofar as it relates to the Crouches’ nuisance claim.

D. Trespass

The Crouches lastly assert in a footnote that “[tjrespass and nuisance are related actions and the same set of facts will frequently provide a recovery under either theory.” See, however, Borland v. Sanders Lead Co., 369 So.2d at 529 n. 1 (noting that “because of the comprehensive language of our nuisance statute ([Ala.Code 1975,] § 6-5-120), conduct which rises to the level of trespass to land, generally speaking, would support a nuisance action; the converse, however, is not necessarily true”).
In Born v. Exxon Corp., 388 So.2d 933, 934 (Ala.1980), this Court quoted Borland, 369 So.2d at 530, regarding the two actions:
“ ‘For an indirect invasion to amount to an actionable trespass, there must be an interference with plaintiffs exclusive possessory interest; that is, through the defendant’s intentional conduct, and with reasonable foreseeability, some substance has entered upon the land itself, affecting its nature and character, and causing substantial actual damage to the res. For example, if the smoke or polluting substance emitting from a defendant’s operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiffs remedy is for nuisance; but if, as a result of the defendant’s operation, the polluting substance is deposited upon the plaintiff’s property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist.’ ”
(Emphasis added.)
In this case, the Crouches do not allege that Alliance’s blasting has caused any type of physical substance such as rock or other debris to be deposited onto their property. See also Borland, supra, recognizing that “Alabama case law rejects the theory that mere concussion caused by blasting operations constitutes a trespass.” 369 So.2d at 528. Accordingly, the trial court did not err in entering a summary judgment in favor of Alliance on the Crouches’ trespass claim.

TV. Conclusion

We affirm the trial court’s summary judgment in favor of Alliance on the Crouches’ trespass claim. We reverse the summary judgment in favor of Alliance on the Crouches’ claims alleging an abnormally dangerous activity, wantonness, and nuisance, and we remand the case to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and MAIN and BRYAN, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result.

. This entity is also referred to in the record as Alliance Sand & Aggregates, LLC.

. The complaint also lists other plaintiffs in Franklin County who allegedly suffered property damage as a result of the blasting operations; however, this appeal concerns only the Crouches.

. We note initially that the parties do not dispute that the summary judgment in favor of the Crouches is a final appealable judgment pursuant to Rule 54(b), even though the judgment disposes of fewer than all the plaintiffs. As previously noted, the complaint names numerous other property owners in Franklin County who also seek compensation for damage to their property that allegedly occurred as a result of Alliance’s blasting operations. In Haynes v. Alfa Financial Corp., 730 So.2d 178, 181 (Ala.1999), this Court stated:
"Pursuant to Rule 54(b), a trial court may direct ‘the entry of a final judgment as to one or more but fewer than all of the claims or parties.’ But Rule 54(b) makes an order final — and therefore appealable — 'only where the trial court "has completely disposed of one of a number of claims, or one of multiple parties.” ’ Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala.1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)).... In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.”
(Emphasis omitted; emphasis added.) Here, the trial court’s judgment fully disposed of all the claims asserted by the Crouches; accordingly, the summary judgment in favor of Alliance is a final appealable judgment.

. In a footnote, the Harper Court additionally stated:
“We note that this aspect of our holding, particularly the determination of the issue of ‘abnormally dangerous activity,’ is at odds with Comment (1) of the Restatement. Consistent with our holdings in Casrell [v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976),] and Atkins [v. American Motors Corp., 335 So.2d 134 (Ala.1976)], we adhere to the traditional, rule of submitting both the issue of culpability and proximate cause to the jury except where no dispute of fact is presented on the issue by the evidence.”
399 So.2d at 253 n.7.

. The Crouches state in their brief in response to Alliance's summary-judgment motion that Mote's testimony "is irrelevant” and that his testimony has not been offered on the Crouches' behalf.

. “Under a traditional standard of negligence approach, the plaintiff must specifically show negligent conduct in the operative blasting procedures that proximately caused damage. In essence, the plaintiff’s evidentiary hurdles are two-pronged: 1) proving that the defendant’s conduct fell below the industry’s acceptable standard of care; and 2) proving that such conduct proximately caused the damage suffered.” Harper, 399 So.2d at 251.

. Alliance's expert stated that the closest distance between the Crouches' house and the nearest blast as of April 9, 2013, was 3,800 feet.